**Rufus GRAYSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 41783.**

Court of Criminal Appeals of Texas.

Feb. 19, 1969.

Curry & Curry, by Tim C. Curry, Fort Worth, for appellant.

Frank Coffey, Dist. Atty., R. J. Adcock and R. W. Crampton, Asst. Dist. Attys., Fort Worth, for the state.

## OPINION

WOODLEY, Presiding Judge.

Tried upon an indictment alleging murder with malice aforethought of Mary Brisco, on or about August 9, 1967, the jury on March 26, 1968, found appellant guilty of murder without malice; assessed his punishment at 5 years and rejected his application for probation.

The sole ground of error set forth in appellant's brief is:

"The trial court erred in admitting into evidence the written statement and certain oral statements of the defendant because the state wholly failed to demonstrate an intelligent waiver by the defendant of his constitutional rights."

A hearing was held out of the presence of the jury on the issue of admissibility of an oral statement and a written statement which the defense sought to suppress for the reason set out in the ground of error. Following the hearing, the trial judge found from the evidence adduced that the statements were voluntarily made, after appellant had been taken before a magistrate who informed him of the accusation against him; of his right to retain counsel and to request appointment of counsel if unable to obtain counsel; of his right to an examining trial; that he was not required to make a statement, and that any statement made by him may be used against him. He was also informed of his right to talk to an attorney prior to interrogation and prior to making any statement and the court found

that "at no time did the defendant request that he be permitted to consult an attorney, nor was he denied the right to consult an attorney, but——the contrary, the defendant specifically waived his right to consult with an attorney."

Also, the court found "that the statement of the defendant was freely and voluntarily made without compulsion or persuasion and that, in connection with said statement, circumstances were found to be true which conduce to establish his guilt, to wit: the finding of a knife and purse."

The court having ruled that the confession was admissible, evidence similar to that offered before the court was offered before the jury and the court in his charge, to which there were no objections, instructed the jury that the statements of the defendant were not to be considered as evidence unless the jury believed beyond a reasonable doubt that the defendant made an intelligent waiver of his right to retain or have counsel appointed and of his right to remain silent.

Also the jury was instructed to disregard the confession or confessions if they believed or had reasonable doubt that the defendant was not possessed of sufficient mentality to know what he was doing and the nature and effect of his act in making a confession.

The evidence adduced before the court sustains the foregoing findings of the trial judge and we do not understand that such findings are challenged.

The trial court's further findings which are challenged were "that the defendant was capable of understanding all the rights of which he was advised and that the defendant knowingly, voluntarily and intelligently waived these rights."

Appellant's brief makes it clear that it is not his contention that he should not answer any accusation against him connected with the indictment. Neither insanity as a defense nor present insanity or incompetency to stand trial is claimed.

The court's offer to submit such issues to the jury was declined.

Appellant's contention is that it was proved that, because of his low mentality, appellant could not waive his constitutional rights and the state wholly failed to prove that he did intelligently waive such rights. In other words, the contention is that the undisputed evidence shows that appellant did not have sufficient intelligence to waive his rights in regard to his confession, though he was competent to stand trial and responsible for his criminal acts.

The state's witness LeFils testified that the magistrate gave the full warning set out in the written confession and that he gave appellant the same warning after which appellant asked if he could talk to his wife. The officer further testified that appellant had a conversation with his wife in which he told her that he was in jail and a murder charge was going to be filed and he was going to be transferred to the County Jail. He quoted appellant as staating that he "didn't need a lawyer," and that he understood what he was saying and what he was charged with.

McKinnon, reporter for the Star Telegram, identified the statement offered in evidence as that he read to appellant and signed as a witness to his mark, and testified that he stopped once or twice to ask appellant if he understood the statement and he gave an affirmative answer, one time being when he read the printed part where it advised him that he could have an attorney; that he asked appellant if he understood this and he nodded his head or otherwise answered in the affirmative.

McKinnon expressed the opinion that appellant understood the statement read to him.

As supporting his contention that the undisputed evidence shows that as a matter of law it was impossible for appellant to intelligently waive his rights in regard to the signing of a statement, appellant relies upon the testimony of Dr. Jerold

May, a clinical psychologist who examined appellant to determine his intelligence quotient, and testified that appellant had a mental age as opposed to his chronological age (50 years) of less than a six year old child and he expressed the opinion that because of his severe mental deficiency it would be impossible for appellant to understand, much less waive, any rights granted to him by the constitution, and that people of his level of intelligence are qualified and are often sent to institutions for the mentally retarded.[1]

Dr. H. Leake McCauley, M.D. and practicing psychiatrist, who also examined appellant, expressed the opinion that he was not nearly as intelligent as a normal three or four year old child and that he had "on very rare occasions seen people as severely retarded as this man walking on the streets." He also testified that he did not think there would be any way to get across to appellant so he could understand what "a reasonable time or opportunity to consult my counsel" meant.

The psychiatrist and the psychologist testified that appellant had an intelligence quotient (I.Q.) of 51 and classified him as a low-grade moron.

Testimony was elicited from them that there were several thousand mentally retarded persons with similar classification in the Dallas-Ft. Worth area who were not in an institution for the mentally retarded.

The record reflects that appellant was married and was supporting his family by his labor. He testified at his trial both on the issue of guilt or innocence and at the hearing on punishment and whether his application for probation should be granted. He was on bond during his trial and is on bond pending the disposition of his appeal.

It is difficult to see how one accused of crime may lack sufficient intelligence to waive his right against self-incrimination and to counsel, yet be competent to stand trial; to understand the nature of the charge against him and to assist his counsel in preparing a rational defense.

Testimony was elicited from appellant's expert witness to the effect that appellant should be institutionalized as dangerous to himself and to society, though their testimony was that generally mentally retarded persons were gentle people and not trouble makers.

As a matter of trial strategy no defense of insanity was raised and the possibility of appellant being committed as a presently insane person was avoided.

Whether appellant had the mental competency or intelligence required to waive his right to remain silent and to have counsel present was for the court and the jury. The issue was fairly presented and resolved against appellant.

The testimony of the psychologist and psychiatrist was not conclusive and

---

1. Section 3(1) of Art. 3871b Vernon's Ann.Civ.St. defines "mentally retarded person" to mean "any person, *other than* a mentally ill person, so mentally deficient from any cause as to require special training, education, supervision, treatment, care or control for his own or the community's welfare."
Art. 3233 R.C.S., repealed by Sec. 5 of Art. 3871b, supra, in 1955, defined "a feeble minded child" as "one of such feeble mental or moral powers as to be unable to profit by the ordinary methods of education as employed in the common schools," and defined a feeble minded adult as "one who is unable under ordinary circumstances to protect and support himself as a law abiding citizen because of lack of mental power."
An adjudication declaring one mentally retarded necessary for his admission to an institution for mentally retarded persons (under the Mentally Retarded Persons Act of 1955, Acts 3871b et seq., V.A.C.S.) or commitment as a feeble minded person under the prior statute (Art. 3233 R.C.S., et seq.) is not an adjudication of insanity and creates no presumption of insanity or incompetency to stand trial in a criminal case. Martinez v. State, 169 Tex.Cr.R. 229, 333 S.W.2d 370; McCune v. State, 156 Tex. Cr.R. 207, 240 S.W.2d 305.

did not require a finding that the state failed to demonstrate an intelligent waiver of his privilege against self-incrimination and his right to retained or appointed counsel required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

The judgment is affirmed.

DOUGLAS, J., not participating.