**Emilio Gutierrez CASIAS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 42817.**

Court of Criminal Appeals of Texas.

April 1, 1970.

Joe V. Boerner, Jr., Lubbock (Court Appointed on Appeal), John R. McFall, Lubbock (Court Appointed on Appeal), for appellant.

Blair Cherry, Jr., Dist. Atty., and Robert B. Wilson, Asst. Dist. Atty., Lubbock, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is robbery by assault; the punishment, life.

Appellant contends the State failed to prove the corpus delicti and the evidence is insufficient to sustain the conviction.

Omitting the formal parts, the indictment charged that appellant on or about November 1, 1967,

"did then and there unlawfully in the County and State aforesaid, in and upon Mrs. J. H. Wilson make an assault; and did then and there, by the said assault, and by violence to the said Mrs. J. H. Wilson, and by putting the said Mrs. J. H. Wilson in fear of life and bodily injury, and then and there fraudulently, and without the consent of the said Mrs. J. H. Wilson, take from the possession of her, the said Mrs. J. H. Wilson, good and lawful United States currency, the same being then and there the corporeal personal property of the said Mrs. J. H. Wilson, with the intent then and there to deprive the said Mrs. J. H. Wilson, of the value of the same, and to appropriate the same to his, EMILIO GUTIERREZ CASIAS' own use * * *."

The trial of the case was complicated by the inability of the complaining witness to testify as a result of injuries received. The State relies upon appellant's confession and the law of circumstantial evidence.

The record reflects that on the morning of November 1, 1967, Lubbock police officers found "Mrs. Wilson" lying in a blood-splattered room in a house at 1309 7th Street in the city of Lubbock. She was "one bloody mess" and a blood stained hammer was discovered nearby. The house had been ransacked and apparently thoroughly searched.

Mrs. J. H. (Hettie) Wilson was shown to have been admitted in critical condition to the Methodist Hospital in Lubbock on November 1, 1967. She had multiple compound depressed skull fractures, a broken arm and was near death. Surgery followed.

Helen Lieb testified that Mrs. J. H. Wilson had lived at 1309 7th Street in Lubbock on November 1, 1967, and that she had seen her in the Lubbock Methodist Hospital shortly after that date; that Mrs. Wilson was at the time of the trial 76 years old and in a nursing home in Albany, Texas, being cared for by Mrs. Lieb's mother and aunt; that Mrs. Wilson was like a child and had never mentioned the incident of November 1, 1967; that she was physically unable to be present at the trial.

Omitting the warnings and formal parts, appellant's extrajudicial confession reads as follows:

"I wish to say that last night that I *sleep* in a car next to Brooks Super market. Today I got up and started walking looking for somewhere to break into because I needed a shot, I walked by a house and the front door was open and I went into the house and there was *a* old woman sitting in the living room and I asked her for her money. She said that she wasn't going to give it to me and I saw a hammer *laying in* the floor and I picked it up and hit her with it. I think I hit her three times. I don't know what made me hit her but I did hit her. I then searched the house and the only money I found was some in a cloth sack and it was all in change. After I searched the house I left and went to a grocery store and had the man there at the store to call a Cab. The Cab came and picked me up and took me to 30th and Ave A where he let me out and I walked over to the house where the police picked me up. I changed my shirt and shoes at the house and then the man that lives at the house wanted to go to the grocery store and get some groceries and I went with him. When we returned back to the house that is when the Police picked me up. I wish to say that I am *a* addict and that I was needing a shot and that is the reason that I broke into the house was to get me some money to buy me some *Heroin*. I can read the English language and this statement is true and correct."

Other evidence showed that the appellant appeared at a Lubbock grocery store approximately a block and a half from 1309

7th Street on the morning of November 1, 1967, with stains on his hands, handed an employee there a dime and requested he call a taxi cab. The taxi driver testified he picked up the appellant at the grocery store and took him to the address at which he was subsequently arrested and related he had been paid by the appellant $1.15 entirely in change. The appellant was later arrested on November 1, 1967, at 30th and Ave A Streets in Lubbock, with a pocketful of change, either $3.00 or $5.00.

The blood on the hammer was shown to be type O human blood which was the same blood type possessed by Mrs. Wilson and the appellant.

"In establishing the corpus delicti, the confession may be used in connection with the other facts and circumstances, that is, the confession may be used to aid the proof of the corpus delicti, and the corpus delicti may be proved by circumstances as well as by direct evidence. Watson v. State, 154 [Tex.]Crim.[R.] 438, 227 S.W.2d 559." 5 Branch's Ann. P.C., 2nd ed., Sec. 2596, pp. 28–29; 24 Tex.Jur.2d, Evidence, Secs. 675 and 730.

■ The court charged the jury on the law of circumstantial evidence and we conclude that evidence, viewed in the light most favorable to the State as we are required to do, is sufficient to sustain the jury's verdict. We specifically reject appellant's claims that (a) the evidence failed to show that the Mrs. Wilson found at 1309 7th Street was the Mrs. J. H. Wilson alleged in the indictment, (b) the evidence was insufficient to show lack of consent by Mrs. J. H. Wilson to the taking of her property and (c) the evidence was insufficient to show that currency taken, if any, belonged to Mrs. J. H. Wilson.

■ The question of whether the evidence supports the allegation that appellant took "good and lawful United States currency" is without merit in light of the evidence that appellant confessed he took change, that he paid the cab driver with coined money, and was later found in possession of change or coined money.

"Currency" is defined in Black's Law Dictionary, 3rd ed., as "coined money and such bank notes or other paper money as are authorized by law and do in fact circulate from hand to hand as the medium of exchange."

"Current money" is defined in the same authority as "[t]he currency of the country; whatever is intended to and does actually circulate as currency; every species of coin or currency."

"The terms 'money' and 'current money of the United States' include gold, silver and other minor coins, bank bills, legal tender notes, gold and silver certificates, and every kind of paper currency which passes current as money under the guarantee of the United States." 5 Branch's Ann.P.C., 2nd ed., Sec. 2824, p. 335.

While the Texas cases have not always been consistent, the better view seems to be that adopted in Brittain v. State, 52 Tex. Cr.R. 169, 105 S.W. 817, where the court said:

"Currency, or lawful currency, is broad enough, under the decisions as we find them, to include gold and silver, as well as what we usually term 'paper currency.' "

In Brittain, a theft from person prosecution, the indictment alleged "two dollars in money, lawful currency of the United States of America * * *" and the evidence showed two silver dollars were taken.

Grounds of error #2 and #3 are overruled.

■ In his fourth ground of error appellant contends the trial court erred in admitting appellant's extrajudicial confession which contained admission of "other or extraneous offenses." Appellant relies upon that portion of the written confession which reads:

"Today I got up and started walking looking for somewhere to break in be-

cause I needed a shot. * * * I wish to say that I am *a* addict and that I was needing a shot and that is the reason that I broke into the house was to get me some money to buy me some *herion*."

The fact that a person has the status of being a narcotic addict has not been considered a crime since the decision of Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758. See also Salas v. State, Tex.Cr.App., 365 S.W.2d 174, cert. dism. 375 U.S. 15, 84 S.Ct. 96, 11 L.Ed.2d 45; Ex parte Rogers, Tex.Cr.App., 366 S.W.2d 559; Article 725b, Vernon's Ann. P.C.

Further, an intent to commit a crime (i. e., the possession of heroin) in absence of an overt act does not normally constitute the commission of an offense.

In Sustaita v. State, Tex.Cr.App., 396 S.W.2d 381, it was held that admission into evidence of portions of the defendant's confession relating to reasons and means whereby he was armed and at the theater on the night of the shooting was not for the purpose of proving extraneous offenses and was not reversible error in a murder prosecution. Assuming the objection was sufficient, we overrule ground of error #4.

And for the same reasons set forth above, the trial court did not err in failing to instruct the jury as to extraneous offenses contained in the confession.

Ground of error #5 is overruled.

■ Further, we cannot agree that the court erred in refusing to instruct the jury relative to the allegedly exculpatory statement contained in the confession introduced by the State. Appellant relies upon the statement "I don't know what made me hit her, but I did hit her." Such statement when read in the context in which it is found in the confession is not such as to have required the court to have charged as desired by the appellant. In 23 Tex. Jur.2d, Evidence, Sec. 116, p. 116, it is written: "The State need not disprove such statements if they are actually not sufficient to exculpate the defendant or if other circumstances exist to connect him with the offense charged." We think the charge given adequately protected appellant's rights.

Ground of error #6 is overruled.

Appellant also complains that the court erred in failing to instruct the jury to disregard his confession if they found from the evidence or had a reasonable doubt that he did not have the mental ability to understand the contents thereof and the warnings allegedly given.

Appellant's first trial under this indictment concluded on April 18, 1968, with his punishment being assessed by the jury at confinement for 40 years. On June 20, 1968, appellant's motion for new trial was granted as a result of the trial court's refusal to grant appellant's timely demand for a preliminary hearing to determine appellant's present insanity or competency to stand trial. Such action was taken in light of the decision of this court in Townsend v. State, 427 S.W.2d 55, rendered on April 24, 1968. See also Morales v. State, Tex. Cr.App., 427 S.W.2d 51.

After the motion for new trial was granted, appellant's court appointed attorneys were allowed to withdraw and two other attorneys were appointed for the second trial.

Prior to the second trial which resulted in the conviction from which this appeal is taken, a motion to withdraw the request or demand for a separate sanity hearing to determine his competency to stand trial was made. To support such motion the appellant called Dr. Murray R. Kovnar, a clinical psychologist and a professor at Texas Tech University. Dr. Kovnar related that as a result of tests given since the first trial he had concluded that the 28 year old appellant knew the difference between right and wrong and understood the nature of the proceedings against him. Appellant's

attorneys assured the court no evidence as to competency to stand trial or insanity as a defense would be offered at the trial on merits. The court, then, with the personal consent of the appellant, allowed the motion to be withdrawn.

At the hearing in the jury's absence to determine the admissibility and voluntariness of the confession, Dr. Kovnar again testified and stated appellant had an I.Q. of 68, was retarded, was not able in his opinion to read, was illiterate, had a limited vocabulary, had a mental age of eight to ten years of age, and an educational equivalent of "approximately second grade." The court found the confession to have been voluntarily made after all proper warnings had been given and waiver obtained. He further found the appellant had stated to the officers he could read and had appeared to read the confession. The record also shows that the appellant swore to the confession and stated to the notary public that the same was true and correct.

When the issue of voluntariness was raised before the jury Dr. Kovnar again testified as he had in the jury's absence. He acknowledged that appellant could have understood the warnings given and while he disagreed with the sentence structure and arrangement of the body of the confession, he did agree that appellant could have conveyed the message contained therein. He expressed the thought that appellant would have said "sack" rather than "cloth sack."

Dr. Kovnar again reiterated that in his opinion the appellant knew right from wrong and understood the nature of the proceedings against him.

The court fully submitted the issue of voluntariness to the jurors requiring that before considering the confession they must find all the proper warnings were given and that appellant did "knowingly, intelligently and voluntarily waive those rights

prior to and during the making of the alleged statement."

The court did not respond to appellant's objection that the court had failed to charge on his mental ability to understand the contents of the statement.

■ It has been said that there is a general agreement among courts that a confession of crime is not inadmissible merely because the accused, who was not insane, was of less than normal intelligence, Vasquez v. State, 163 Tex.Cr.R. 16, 288 S.W.2d 100, and mere illiteracy has not been considered as a form of mental subnormality. Berry v. State, 58 Tex.Cr.R. 291, 125 S.W. 580. In Vasquez, the confession was held to be admissible where the accused was shown to have been a "mentally deficient person between a moron and an imbecile" who had a "mental age of 4 years and 7 months."

■ Of course, if the mental subnormality is so great that an accused is incapable of understanding the meaning and effect of his confession, then it would not be admissible. Grayson v. State, 40 Tex.Cr.R. 573, 51 S.W. 246.

In Hanus v. State, 104 Tex.Cr.R. 543, 286 S.W. 218, it was pointed out that there is considerable authority for the proposition that in determining the admissibility of a confession of a crime, the fact that it was made by one whose mentality was at a lower than normal level is to be taken into consideration and viewed as a factor indicating, although not establishing, that the confession was lacking in voluntariness.

Here, as in Vasquez, there was no contention that the accused was insane, and although the testimony as to his low mentality would not be without weight on the question of admissibility, the evidence in the case did not show the accused was an incompetent witness [1] or that his confession should have been excluded.

1. At the first trial the appellant testified as a witness as to the voluntariness of the confession. At the penalty stage of the proceedings at the second trial it was revealed appellant had previously been convicted on the same day of three felonies.

As in Grayson v. State, Tex.Cr.App., 438 S.W.2d 553, it is difficult to see how one accused of a crime may not have sufficient intelligence or mental ability to understand the content of his confession and yet be competent to stand trial, understand the nature of the charge against him and to assist his counsel in preparing a rational defense.

■ While the trial court might have been well advised to have responded to appellant's objection to the charge, we cannot conclude, in light of the evidence offered, the charge on voluntariness and counsel's jury argument on intelligence and mental ability as a factor to be considered in determining voluntariness, that the court's failure to charge as desired was calculated to injure appellant's rights or deprived him of a fair and impartial trial. See Article 38.19, V.A.C.C.P.

Ground of error #1 is overruled.

■ The appellant next contends the court erred in allowing one State's witness to bolster another witness' testimony. He relies upon Lyons v. State, Tex.Cr.App., 388 S.W.2d 950 and Vines v. State, Tex.Cr. App., 397 S.W.2d 868. See also Ward v. State, Tex.Cr.App., 427 S.W.2d 876; Brown v. State, Tex.Cr.App., 403 S.W.2d 411. Cf. King v. State, Tex.Cr.App., 402 S.W.2d 746; Beasley v. State, Tex.Cr.App., 428 S.W.2d 317.

In Lyons v. State, supra, this court wrote:

"It is the rule that while a witness who has identified her assailant at the trial may testify that she also identified him while he was in custody of the police, others may not bolster her unimpeached testimony by corroborating the fact that she did identify him."

In the case at bar the taxi cab driver Weldon identified the appellant as the man he picked up on November 1, 1967, one and one-half blocks from the place where the offense had been committed and that he

had subsequently "picked him (the appellant) out of the lineup." The witness Hayes identified the appellant as the man who entered the grocery store where he (Hayes) was employed and asked him to call a taxi cab. Hayes did not testify as to any lineup.

Officer Rivie Garrett testified that after appellant's arrest the taxicab driver and the boy from Sandlin grocery were summoned. The record then reflects the following:

"Q. All right, and then what?

"A. Had them to come down to the station and we placed him in a line up along with the other two men that was in the car.

"Q. All right. And then what did *you* do after that?

"A. Well, he was picked out of the line up and * * *." (emphasis supplied)

While appellant's prompt objection was not sustained, no further inquiry as to the lineup or identification was made. It is observed that the portion of the witness' answer given was unresponsive and did not reveal who made an identification. Under these circumstances we would not be inclined to apply the rule discussed in Lyons.

Ground of error #7 is overruled.

■ Relying upon North Carolina v. Pearce—Simpson v. Rice, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656, 659, the appellant contends the court erred in allowing the jury to assess a greater punishment than 40 years. This contention is based on the fact that appellant's life conviction stems from his second trial. At his first trial the penalty assessed by the jury was 40 years. At the appellant's behest a motion for new trial, as earlier noted, was granted. North Carolina v. Pearce—Simpson v. Rice, supra, holds that increased punishment on retrial is constitutionally prohibited unless the reasons therefor are made a part of the record. The decisions

sought to prevent increased penalties from being the product of the sentencing judge's retaliatory motives or vindictiveness resulting from the accused's successful effort in securing a new trial. Unfortunately, the United States Supreme Court did not discuss Pearce's application to Texas and other jurisdictions where the jury is permitted, in many instances, to assess punishment.

In Branch v. State, Tex.Cr.App., 445 S.W.2d 756, this court held that Pearce did not have application where the appellant chose the jury to assess the punishment and, further, where the proof offered at the subsequent trial sustained the allegation of the two prior convictions alleged for enhancement which under Article 63, V.A. P.C., required as a matter of law an increased punishment over the penalty assessed at the original trial where the State failed in its proof of one of the prior convictions alleged for enhancement.

In Gibson v. State, Tex.Cr.App., 448 S.W.2d 481, the majority of this court, citing Branch v. State, supra, held that the mere fact that the defendant's increased punishment was assesséd by the jury in accordance with his request that the penalty be so assessed rendered Pearce inapplicable. Such position finds support in the decisions of Spidle v. State (Mo.) 446 S.W.2d 793 and Pinkard v. Henderson (Tenn.Ct.Crim. App.) 6 Cr.L. 2148.[2]

2. This writer joined in the opinion on rehearing in Branch v. State, supra, since there was considerably more there presented than the simple fact that the defendant had chosen the jury to assess punishment at his retrial. In Gibson v. State, supra, this writer concurred since there was no evidence that the jury at the second trial was aware that the appellant had been previously tried and convicted for the same offense and had secured a new trial at his behest. Neither did Gibson insist the retrial jury had such knowledge and was motivated thereby in assessing an increased penalty, or that there were no new facts to justify the increased punishment. In addition to appellant's request for a jury at his second

For the reasons stated, ground of error #8 is overruled.

Finding no reversible error, the judgment is affirmed.

trial, the same factors as in Gibson are presented here. Still further, the record of the first trial has been brought forward in the record before us and it is evident additional facts were presented, it cannot be concluded that Pearce calls for reversal in this case.

This writer, however, not speaking for the majority, does not depart from the position he took in Gibson that he could not join at this time in a flat statement that the principle of Pearce could never have application where the punishment upon retrial is assessed by the jury rather than by a judge. An accused's choice of a jury to assess punishment at his retrial should not be so burdened.