Criminal Opinion template







NUMBER 13-98- 095-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

____________________________________________________________________


JOSE ALBERTO MARTINEZ, Appellant,



v.




THE STATE OF TEXAS, Appellee.

____________________________________________________________________



On appeal from the 275th District Court

of Hidalgo County, Texas.

____________________________________________________________________



O P I N I O N

Before Justices Dorsey, Chavez, and Rodriguez

Opinion by Justice Chavez




 Jose Alberto Martinez was found guilty by a jury of capital murder (1) and sentenced to life in prison. He raises five issues
on appeal, arguing that his confession and evidence found in his car and home should have been suppressed, the evidence
supporting his conviction was legally and factually insufficient, certain autopsy photographs should have been excluded
from evidence as more unfairly prejudicial than probative, and the trial court improperly refused to consider evidence
offered in support of his motion for new trial. We affirm.

 The body of the victim, thirteen-year-old Eleanore Cammack, was found face down near an irrigation canal. Her pants
were unbuttoned, her belt unfastened, and one breast was outside of her bra. She had wounds on the back of her head. 

 During their investigation, police learned that the victim had a boyfriend named Israel Flores. Flores did not have a car,
and was often driven to Eleanore's house by his cousin, Martinez. The police went to Martinez's house and were told by
Martinez's mother that Flores had gone to Nebraska a few days earlier. She told police her son had been away from home
on the evening of the murder. 

 The police next interviewed Martinez. They read him his Miranda (2) rights at the beginning of the interview. Martinez
initially told police that he had been home the entire day, but, when confronted with the information his mother gave, he
said that he had been out playing basketball. The police asked him to go with them to the sheriff's office, and he complied.
They arrived at the sheriff's office at approximately 7:00 p.m. and Investigator Daniel Garcia again read Martinez his
Miranda rights. Appellant initially told police about playing basketball on the night in question. He later changed his story
and said that he had picked up a friend named Miguel, with whom he had gone to pick up Eleanore. He stated that they
drove to the place where Eleanore's body was found. (3) Martinez told police that he had witnessed Miguel kill Eleanore by
hitting her in the head with a rock, and that Miguel had done this because Eleanore wouldn't consent to having sex with
him. 

 Later, Martinez told police that there was no "Miguel," and that he had killed Eleanore. He told police that he had kissed
Eleanore, lifted up her bra and touched her breasts, removed her belt, and inserted his finger into her vagina. Then
Eleanore took her belt away and put it back on her waistline but did not fasten it. They then began "playing around"
throwing rocks at each other, but Martinez hit Eleanore in the head with a big rock that knocked her out. Martinez told
police that he was frightened that Eleanore would press charges against him, so he took a large rock and hit her on the head
with it "real hard" about three times and left her there. 

 Investigator Garcia typed a written statement and gave it to Martinez to review and sign. Martinez signed the statement at
approximately 11:30 p.m. Miranda warnings were printed on the statement, but Garcia did not read them to Martinez, and
Martinez did not sign or initial by the warnings. Martinez never asked to terminate the interview or to leave.

 Martinez first contends that his confession should have been suppressed because it was the fruit of an illegal detention and
arrest. 

 Generally, we review evidentiary rulings by a trial court under an abuse of discretion standard. McVickers v. State, 874
S.W.2d 662, 664 (Tex. Crim. App. 1993). The trial court abuses its discretion only if it acts without any guiding rules or
principles, or acts arbitrarily or unreasonably. Montgomery v. State, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990). In
the motion to suppress context, the trial judge is the exclusive trier of fact, and may determine the credibility of witnesses
and the weight to be given their testimony. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). However,
despite the deference afforded to a trial court's determination of historical facts supported by the record and to fact findings
based on evaluations of credibility, mixed questions of law and fact which do not turn on matters of witness credibility are
reviewed de novo. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

 Questioning at a police station does not, in and of itself, constitute custodial questioning. California v. Beheler, 463 U.S.
1121, 1124-25 (1983); Dowthitt v. State, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). A person is "in custody" only if,
under the circumstances, a reasonable person would believe that his freedom of movement was restricted to the degree
associated with a formal arrest. Stansbury v. California, 511 U.S. 318, 323-325, 114 S.Ct. 1526, 1528-30 (1994); Dowthitt,
931 S.W.2d at 254. The subjective intent of law enforcement officials to arrest is irrelevant unless that intent is
communicated or otherwise manifested to the suspect. Id. The court of criminal appeals has outlined at least four general
situations which may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any
significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement
officers create a situation that would lead a reasonable person to believe that his freedom of movement has been
significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect
that he is free to leave. Shiflet v. State, 732 S.W.2d 622, 629 (Tex. Crim. App. 1995). Concerning the fourth situation,
Stansbury dictates that the officers' knowledge of probable cause be manifested to the suspect. Dowthitt, 931 S.W.2d at
255. Such manifestation could occur if information substantiating probable cause is related by the officers to the suspect or
by the suspect to the officers. Id. 

 In this case, appellant argues that his confession should have been suppressed because the police detained him without
authority to do so. During questioning Martinez gave gradually more and more self-incriminating statements before finally
confessing that he had committed the murder. Obviously, once Martinez's statements reached the point where the police
had "probable cause," the police had authority to detain him. Martinez does not contend that the police neglected to apprise
him of hisMiranda rights or neglected any other obligation under article 38.22 of the code of criminal procedure. 
Therefore, Martinez's argument must be that the circumstances of his interrogation were "custodial" before his statements
to the police reached the point of "probable cause."

 It is undisputed that the police never told Martinez that he was not free to leave until he was arrested after confessing to the
murder. Martinez points to these facts as support for his argument that he was physically deprived of his freedom of action,
or reasonably believed that his freedom of movement had been significantly restricted: He was taken to the police station in
the back seat of a police pickup truck, the police accompanying him were larger than him and armed, he was led into the
police station through a back entrance used for prisoners rather than the front door used by visitors, and once inside the
sheriff's office he was locked in. 

 We do not agree that these factors amounted to physical restriction of appellant's freedom of movement, or would support
a reasonable belief that appellant was not free to leave. Appellant makes much of the difficulty he would have had
"escaping" from the larger, armed policemen, penned into the back of the truck and then locked inside the police station. 
However, the use of the word "escape" presumes that the police would not voluntarily permit Martinez to leave. There is
no evidence to support this presumption. Martinez willingly accompanied the police and never expressed any desire to
leave. It is standard police procedure that officers ride in the front seat and civilians, regardless of their culpability, ride in
the back. There is no evidence that Martinez understood that he was being taken into the police station through the
"prisoner's" entrance rather than the entrance usually used by visitors. Investigator Garcia testified that they took Martinez
through the entrance that the police always use. Finally, there is no evidence that Martinez knew the interior door to the
sheriff's office locked behind him. Here as well, the fact that the door locked would be more significant if Martinez had
asked to leave and been ignored or refused. Under the circumstances of this case, we hold that Martinez's confession was
not the product of an improper detention.

 Martinez also contends that his confession was neither voluntarily, knowingly, nor intelligently given. To determine
whether circumstances render an accused's statement involuntary, we ultimately must determine whether the accused's will
was "overborne" by police coercion, such that his confession was unlikely to have been the product of a rational intellect
and a free will. Smith v. State, 779 S.W.2d 417, 427 (Tex. Crim. App. 1989); Armstrong v. State, 718 S.W.2d 686, 693
(Tex. Crim. App. 1985). Relevant circumstances with regard to this question include the length of detention, refusing a
defendant's request to contact a lawyer or family, and physical brutality. Armstrong, 718 S.W.2d at 693. Mental
retardation is also a factor, although not alone determinative, in ascertaining voluntariness of a confession. Smith, 779
S.W.2d at 429 n.8.

 Martinez was seventeen years old at the time of the offense and his questioning. He was in the ninth grade in a special
education program. A psychologist who examined Martinez testified that Martinez's intelligence quotient (I.Q.) was 73,
and that 70 was considered the threshold for someone to be considered "mildly or educably retarded." The psychologist
testified that it was "possible" that Martinez's confession was not made knowingly, intelligently, and voluntarily, and that it
was "probable" that he would say things to authority figures that he thought the authority figures wanted to hear. He also
testified that he believed Martinez had understood theMiranda warnings that preceded his interrogation. Martinez's mother
testified that her son was easily led by other people and tended to agree with whatever other people said, and that often he
would say what he thought other people wanted him to say.

 Regarding Martinez's low I.Q., we note that the court of criminal appeals has repeatedly upheld confessions of suspects
who had mental deficiencies at least as significant as this defendant's. See Penry v. State, 903 S.W.2d 715, 745 (Tex. Crim.
App. 1995) (I.Q. scores ranged from forties to seventies); Smith, 779 S.W.2d at 419, 429 (defendant described at various
times as having "severe," "borderline," and "trainable" mental retardation); Casias v. State, 452 S.W.2d 483, 488 (Tex.
Crim. App. 1970) (defendant had I.Q. of 68, was illiterate, and had mental age of eight to ten years); Grayson v. State, 438
S.W.2d 553, 555 (Tex. Crim. App. 1969) (defendant had I.Q. of 51 and mental age of six years). The psychologist refused
to flatly declare Martinez's statement involuntary, rather he insisted on answering equivocally that it was "possible" that the
statement was involuntary, and "probable" that Martinez's statement would be influenced by the police officers. This
testimony was not sufficient to render the trial court's determination that the confession was voluntary an abuse of
discretion. We find no error in the first issue raised by the appellant.

 Next appellant argues that the trial court erred in overruling his motion to suppress evidence attained from a search of his
car and home because the searches were the fruit of an improper custodial interrogation. Because we have held that
appellant was not the subject of an improper custodial interrogation, we reject this argument.

 Appellant's second and fourth issues challenge the legal and factual sufficiency of the evidence supporting the conviction. 
The standard of review for challenges to the legal sufficiency of the evidence in criminal cases is that set forth in Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979). Clewis v. State, 922 S.W.2d 126, 132-33 (Tex. Crim. App.
1996). The Jackson standard inquires whether, after viewing the evidence in the light most favorable to the prosecution,
any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson, 443
U.S. at 319, 99 S.Ct. at 2789. The verdict may be set aside pursuant to a factual sufficiency challenge only if, after
viewing the evidence without the prism of "in the light most favorable to the prosecution," it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis, 922 S.W.2d at 129. 

 An extra-judicial confession must be corroborated with independent evidence tending to show that a crime was committed. 
Gribble v. State, 808 S.W.2d 65, 70 (Tex. Crim. App. 1990). It need not be corroborated as to the person who committed
it, since the identity of the perpetrator is not a part of the corpus delicti and may be established by an extra-judicial
confession alone. Id. When the offense charged is capital murder, corroborating evidence is required of both the murder
and the aggravating offense; in this case, aggravated sexual assault. Id. at 71. The quantum of corroborating evidence need
not be great; all that is required is that there be some evidence which renders the corpus delicti more probable than it would
be without the evidence. Id. at 71-72. 

 In this case, the victim's dead body was found, and an autopsy concluded that she had died from blows to the head. This
established sufficient independent evidence of the murder to corroborate Martinez's confession. The victim's pants were
unbuttoned and her belt unfastened. This was some evidence which rendered it more probable that an aggravated sexual
assault had been committed than it would be without this evidence. (4) We hold that appellant's confession was sufficiently
corroborated and that no error is present in the second and fourth issues raised by appellant.

 In his third issue Martinez complains of the trial court's admission of autopsy photographs into evidence over his objection
that the danger of unfair prejudice outweighed the probative value of the evidence. The trial court's decision to admit
evidence is reviewed under an abuse of discretion standard. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1990) (op. on rehearing). A court may consider many factors in determining whether the probative value of evidence is
substantially outweighed by the danger of unfair prejudice, including the number of exhibits offered, their gruesomeness,
their detail, their size, whether they are in color or black and white, whether they are close-up, and whether the body
depicted is clothed or naked. Long v. State, 823 S.W.2d 259, 272 (Tex. Crim. App. 1991). A court should not be limited
by this list, however, and the availability of other means of proof and the circumstances unique to each individual case
should also be considered. Id.

 The photographs at issue are color photographs, four inches by six inches. They show lacerations, bruises, and blood on
the front and back of the victim's head. On the two photographs depicting wounds to the back of the victim's head, the skin
had been pulled back, exhibiting the skull fracture suffered by the victim and blood accumulation beneath the scalp. The
doctor who conducted the autopsy told the trial court that he thought the photographs would assist the jury in understanding
his testimony.

 In Sonnier v. State, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995) the court held that the trial court did not abuse its
discretion in admitting 8 X 10 color photographs (including close-up pictures) that depicted a nude woman who had been
bludgeoned, strangled, stomped, and stabbed to death lying nude in a bathtub filled with bloody water; with her two year
old son, who had also been stabbed to death, lying on top of her with his head submerged in the bloody water. The court
explained that "when the [prejudicial] power of the visible evidence emanates from nothing more than what the defendant
has himself done[,] we cannot hold that the trial court has abused its discretion merely because it admitted the evidence." 
Id. 



 For the photographs of the front of the victim's head, as in Sonnier, the prejudicial power emanated from the violent acts of
the defendant. Accordingly, the trial court did not abuse its discretion in admitting those photographs. 

 We next consider the photographs of the back of the head with the skin peeled back to reveal internal injuries. The court
of criminal appeals has held, in a case predating the Texas Rules of Criminal Evidence, that it was error for the trial court to
admit autopsy photographs where the autopsy had resulted in "massive mutilation" of the body and where the exhibits
depict "primarily what was done by the person who performed the autopsy rather than that alleged to have been done by the
appellant." Terry v. State, 491 S.W.2d 161, 163-64 (Tex. Crim. App. 1973). However, in a case similar to this one, we
have held that an autopsy photograph of the victim's "exposed" skull was admissible where it showed the actual fracturing
of the skull, and the autopsy photograph did not result in massive mutilation or obfuscation of the results of the crime. 
Kimes v. State, 740 S.W.2d 903, 906 (Tex. App.--Corpus Christi 1987, pet. ref'd). With regard to the photographs in this
case, although the fact that the skin had been peeled back during the autopsy may have added to the gruesomeness of the
photographs, peeling back the skin was necessary to show the internal injuries caused by the defendant's blows, and no
"massive mutilation" or "obfuscation" was done. We hold that the trial court did not abuse its discretion in admitting these
photographs. In his final issue, appellant complains that the trial court was obligated to hold a hearing on his motion for
new trial. His motion for new trial contained allegations of juror misconduct and was supported by an affidavit from a
juror. The trial court is required to hold a hearing on a motion for new trial when accompanying affidavits demonstrate
reasonable grounds for believing that juror misconduct occurred. McIntire v. State, 698 S.W.2d 652, 658 (Tex. Crim. App.
1985). The State contends, however, that no hearing was required because appellant failed to present his motion to the trial
court in a timely manner.

 A defendant's motion for new trial must be filed within thirty days of the date the trial court imposes or suspends sentence
in open court. Tex. R. App. P. 21.4(a). The motion must be presented to the trial court within ten days of filing it. Tex. R.
App. P. 21.6. The term "present" as used in this rule means the record must show that the movant sustained the burden of
actually delivering the motion for new trial to the trial court or otherwise bringing the motion to the attention or actual
notice of the trial court. Carranza v. State, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998). While appellant's motion for new
trial was timely filed, nothing in the record indicates that the motion was ever "presented" within the meaning given to that
term by Carranza. We find no error in the fifth issue raised by the appellant.

 The judgment of the trial court is affirmed.

MELCHOR CHAVEZ

Justice



Do not publish.

TEX. R. APP. P. 47.3.



Opinion delivered and filed this

the 27th day of May, 1999. 

1. Tex. Pen. Code Ann. § 19.03 (Vernon 1994).

2. In Miranda v. Arizona the U.S. Supreme Court determined that "prior to any questioning, the person must be warned
that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has
a right to the presence of an attorney, either retained or appointed." Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602,
1612, 16 L.Ed.2d 694, 706-07 (1966). 

3. The police had not told Martinez where the body was found, nor anything about the condition of the body.

4. An aggravated sexual assault is committed when a person intentionally or knowingly causes the penetration of the
anus or female sexual organ of a child by any means, and the victim is younger than fourteen years of age. Tex. Pen. Code
Ann. § 22.021 (Vernon 1994).