# NO. 12-23-00291-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| ***KENTRAVIOUS RAYMOND WILLIAMS,*** <br> ***APPELLANT*** | § | ***APPEAL FROM THE 114TH*** |
| ***V.*** | § | ***JUDICIAL DISTRICT COURT*** |
| ***THE STATE OF TEXAS,*** <br> ***APPELLEE*** | § | ***SMITH COUNTY, TEXAS*** |

*MEMORANDUM OPINION*

Kentravious Raymond Williams appeals his conviction for sexual assault of a child following his plea of "guilty" pursuant to a plea bargain agreement. In his sole issue, Appellant contends the trial court abused its discretion by denying his motion to suppress. We affirm.

## BACKGROUND

Appellant filed a motion to suppress his inculpatory statements made during custodial interrogation. In the motion, Appellant asserted that Dr. Timothy Proctor, a board-certified forensic psychologist retained by the defense, determined that Appellant has an intellectual disability and therefore lacked the mental capacity or intellectual ability to waive his ***Miranda*** rights freely, knowingly, intelligently, and voluntarily. Appellant contended that his statements to Detectives Aaron Hinton and Jennifer Stockwell of the Smith County Sheriff's Department are therefore inadmissible because they were not voluntary.

At the hearing on Appellant's motion to suppress, Stockwell, who served as lead detective, testified that the sheriff's office received a recording of a video call, which shows the offense. After Officers arrested Appellant, Stockwell and Hinton interviewed him in an interview room at

the jail. Before the interview began, Stockwell read *Miranda* warnings to Appellant line by line at an average speed. After Stockwell read each line, Appellant indicated that he understood by answering "yes[,]" and she believed Appellant voluntarily, knowingly, and intelligently waived his *Miranda* rights. Stockwell and Hinton spoke with Appellant for approximately half an hour. Stockwell testified that Appellant was able to answer their questions, and his answers seemed to make sense. Stockwell primarily used open-ended questions, and she responded affirmatively when asked whether she considered Appellant to be "pretty forthcoming[.]" Stockwell also explained that Appellant could correct her if she said something with which he did not agree. When asked whether he understood the charge against him, Appellant initially responded, "no." Stockwell explained that Appellant did not appear to feel pressured, and she described him as cooperative.

Appellant eventually confessed and told the detectives he knew what he did was wrong because the victim is a child. Stockwell explained that Appellant seemed to become confused during questioning regarding the number of times he had sexual contact with the victim and how long his sexual contacts with the victim continued, so Stockwell and Hinton began questioning Appellant about his level of education, "bank accounts[,] and things of that nature." Appellant told Stockwell that he attended special education classes, received a high school diploma, and is employed. Stockwell testified that she did not know "very much" about Appellant's level of intelligence when she read him his *Miranda* warnings. When told that Proctor determined that Appellant's intellectual disability places him in the lowest one percent of "functioning Americans" and asked whether such a person would understand *Miranda* warnings, Stockwell testified, "I wouldn't think so." Stockwell explained that had she known of Appellant's intellectual disability, she "probably would have approached it a different way." When asked how she felt after the interview, Stockwell testified, "I believe that [Appellant] was correct when he stated that he wasn't good with numbers. But other than that, he indicated he understood everything else. There was no indication that . . . he didn't know what was going on while he was in jail, what he's being charged with, [or] right from wrong."

Hinton testified that he and Stockwell interviewed Appellant at the jail after Stockwell read Appellant his *Miranda* warnings. According to Hinton, Stockwell did not rush through the *Miranda* warnings, and Appellant indicated that he understood the warnings. After receiving *Miranda* warnings, Appellant was forthcoming during the interview, but Hinton agreed that

Appellant "had a hard time" when asked about timelines and the number of times something happened. According to Hinton, Appellant answered the questions he was asked, and his answers were rational. Appellant told detectives that he has his own bank account. Hinton explained that he believes Appellant knowingly, voluntarily, and intelligently waived his *Miranda* rights and agreed to speak to law enforcement officers. When told of Proctor's opinion regarding Appellant's intellectual disability and asked whether he and Stockwell would have done more to ensure that Appellant understood the warnings, Hinton testified, "[p]robably fair to say, yes, sir." Hinton believed Appellant understood the warnings because Appellant affirmatively stated that he did when Stockwell read the warnings to him line by line. Hinton testified that he never questioned Appellant's intellectual abilities during the interview, but he believed Appellant could not "remember how many times he had actually done this."

Proctor testified that he met with Appellant to determine (1) his competency to stand trial and (2) whether he possessed the mental ability to waive his *Miranda* rights knowingly and intelligently. According to Proctor, detectives interviewed Appellant in November 2019, and on June 1, 2020, Proctor concluded that Appellant was incompetent to stand trial.[1] Proctor opined that in November 2019, Appellant could not waive his *Miranda* rights knowingly and intelligently due to his intellectual disability. Proctor explained that a diagnosis of intellectual disability consists of three parts: (1) an IQ that's "roughly below 70, plus or minus 5"; (2) "deficits in adaptive behavior, either in the conceptual, practical, or social domains"; and (3) said deficits in IQ and adaptive behavior existed before the person's early twenties. Appellant's IQ is 65, he has deficits in adaptive behavior, and "these things have been in place throughout his life." Proctor stated that Appellant also has deficits in his ability to read, write, and perform "simple math," has limited social functioning, and "certainly presents with naivete, gullibility." Additionally, Proctor testified that Appellant's "understanding of legal concepts was very limited[.]" Proctor estimated that intellectually disabled individuals are in the bottom two or three percent of Americans, and Appellant's IQ places him in the bottom one percent.

Proctor viewed the video of the interview of Appellant several times, and he opined that (1) Stockwell read Appellant's *Miranda* rights to him "fairly quickly[,]" and (2) the *Miranda* rights involve concepts of which Appellant lacks "a good grasp[.]" Proctor testified that as the interview continued, "it seemed like the officers became aware that he had issues" with his

_____

[1] Appellant was subsequently found competent to stand trial.

intellectual functioning, and Proctor noted that Appellant struggled with estimating dates and times, as well as math. Proctor also opined that the officers' questions indicated that they were becoming aware that "they were dealing with someone that had a lower level of intelligence." Proctor acknowledged that Appellant stated, "Yes, I understand[,]" but Proctor explained that said statement does not mean Appellant truly understood. According to Proctor, "the video shows there are things he does understand." Appellant "certainly knew he was in trouble. He knew that he had done something wrong. He knew he was talking to police. So[,] there are things that are relevant to his understanding of *Miranda* that are demonstrated in that video." Proctor further explained, "[w]e know he's saying yes to these things, but there's not [any] evidence that he truly understood them, that he understood . . . that he really could have an attorney present; that he didn't have to talk to police; . . . what 'terminate' means."

Proctor administered a test to Appellant to determine whether Appellant was malingering, and Appellant did well on the test, which Proctor explained is "consistent with somebody who is not faking or malingering." Additionally, Proctor reviewed Appellant's school records and concluded that the records support his findings. Appellant's employment involves relatively unskilled work, and Appellant is single, always lived with his parents, and does not have a driver's license because he struggled with the written portion of the exam. Proctor explained, "in my opinion, I don't believe that [Appellant] was able to understand or didn't have the capacity to fully understand his *Miranda* rights." Proctor testified that Appellant might have understood portions of the warnings, but Proctor did not believe Appellant "had a full understanding of what was read to him[]" and opined that "there were major things that he did not understand[.]"

During cross-examination, Proctor testified that the levels of intellectual disability are mild, moderate, severe, and profound, and he explained that Appellant's level of intellectual disability is "mild." According to Proctor, the various grades of intellectual disability are "inside what's already a severe condition." Proctor explained that Appellant tends to say "yes", and this trait is common in people with intellectual disabilities. Proctor agreed that Appellant said "no" when asked if he understood the charge against him. Proctor testified that when he reviewed the *Miranda* warnings with Appellant, although there were times when Appellant did not understand an entire concept or a key word, "he still seemed to get the gist of it, at least at that point." According to Proctor, although it is difficult to accurately estimate Appellant's intellectual age, he stated that Appellant functions similarly to someone "in late elementary school."

4

When the prosecutor stated during his questioning of Proctor that Appellant "was not forced to talk to the police[,]" Proctor testified, "I don't see any reason to consider it involuntary in any way. As far as I can tell, him speaking to police was fully voluntary." However, Proctor explained that although Appellant spoke to the detectives voluntarily, he believes Appellant did not knowingly and intelligently waive his *Miranda* rights. Proctor believed Appellant's statement that he knew his conduct was wrong, and he explained, "I think in [Appellant's] mind, he felt that speaking to police was what he needed to do and that being honest as opposed to lying was what was the best thing for him to do, the right thing for him to do, and what he was stating he was doing." Proctor explained that with an IQ of 65 and relatively mild adaptive behavior deficits, Appellant's intellectual disability is mild, but his evaluation of Appellant entailed a functional assessment, in which he considered "the level of intellectual disability he has and how that connected to what he understood at the time."

Proctor individually reviewed all the *Miranda* warnings with Appellant and asked him questions to probe the extent of his understanding. Appellant initially did not know what *Miranda* rights were, did not recall if the detectives read any rights to him, and did not know what it means to have rights. When Proctor asked Appellant whether he could have asked for an attorney, Appellant stated, "I don't know if I could have done that or not." Appellant told Proctor, "I was listening closely, but it wasn't really clicking in my mind." Proctor opined that Appellant did not "have adequate knowledge of what he was being told and an understanding of that information that he was being told[,]" and he stated, "the evidence from a psychological standpoint is strongly pointing towards [Appellant] not having the capacity to understand in a knowing and intelligent way his *Miranda* rights."

After taking the matter under advisement, the trial court signed an order denying Appellant's motion to suppress. The trial judge concluded that although he found Proctor's testimony regarding Appellant's intellectual disability credible, considering the totality of the circumstances, including the recording, he found the detectives' testimony more persuasive "in light of the fact that they were present for the interview and observed the defendant to be alert, coherent, and able to give thoughtful responses to questions asked of him – assessments that mirror the Court's own conclusions after watching the recording of the interview." The trial judge also concluded, "Appellant spoke clearly and concisely. His answers were responsive and focused." Further, the trial court noted in its order that "the record indicates that the defendant is a high

school graduate (although enrolled in special education classes), maintained employment, and managed his own bank account; all factors that the Court finds weigh in favor of a finding that the defendant made a knowing and voluntary waiver of his *Miranda* rights." Appellant ultimately pleaded "guilty" pursuant to a plea-bargain agreement. This appeal followed.

<u>**DENIAL OF MOTION TO SUPPRESS**</u>

In his sole issue, Appellant argues that the trial court abused its discretion by denying his motion to suppress his statements because he was unable to waive his *Miranda* rights intelligently, knowingly, and voluntarily due to his intellectual disability.[2]

**Standard of Review Applicable Law**

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give almost total deference to the trial court's determination of historical facts and mixed questions of law and fact that rely on credibility determinations if they are supported by the record. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). However, we review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008); *see also Kerwick*, 393 S.W.3d at 273. At a hearing on a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). A trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We must uphold the trial court's ruling on a motion to suppress if the ruling is supported by the record and is correct under any theory of law applicable to the case. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

---

[2] The issue stated in the "Issues Presented" portion of Appellant's brief does not match the issue subsequently stated and argued in the body of the brief. In addition, although the brief correctly states Appellant's name in the "Statement of Facts" section, all of the other facts recited therein, including the facts of the offense, are inapposite, and they clearly pertain to a different proceeding than the instant case. But in the body of the brief, appellate counsel correctly stated Appellant's issue, set forth the law, and applied the law to the facts adduced at the hearing on Appellant's motion to suppress. Therefore, in the interest of justice, we will consider the merits of Appellant's issue despite the aforementioned briefing deficiencies. *See* TEX. R. APP. P. 38.9; *Bufkin v. State*, 179 S.W.3d 166, 173-74 (Tex. App.—Houston [14th Dist.] 2005), *aff'd*, 207 S.W.3d 779 (Tex. Crim. App. 2006) (holding that briefing rules are to be construed liberally and substantial compliance with briefing rules "may, in the court's discretion, be sufficient.").

Statements made by a person accused of a crime "may be used in evidence against him if it appears that the same w[ere] freely and voluntarily made without compulsion or persuasion[.]" TEX. CODE CRIM. PROC. ANN. art. 38.21 (West 2023). The State bears the burden of demonstrating by a preponderance of the evidence that a statement was voluntary. *Vasquez v. State*, 411 S.W.3d 918, 920 n.11 (Tex. Crim. App. 2013).

A person's mental deficiency alone is not determinative in assessing the voluntariness of a confession and the waiver of the Fifth Amendment privilege against self-incrimination. *Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995); *Smith v. State*, 779 S.W.2d 417, 429 n.8 (Tex. Crim. App. 1989); *see Casias v. State*, 452 S.W.2d 483, 488 (Tex. Crim. App. 1970) (holding that confession was admissible even though defendant was illiterate, his mental age was eight to ten years, and his IQ was 68); *Grayson v. State*, 438 S.W.2d 553, 555 (Tex. Crim. App. 1969) (concluding that statements from defendant whose IQ was 51 and mental age was approximately six years were admissible). Rather, in determining whether a confession was voluntarily made, courts must examine the totality of the circumstances. *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007) (citing *Arizona v. Fulminante*, 499 U.S. 279, 285-86, 111 S. Ct. 1246, 1252, 113 L. Ed. 2d 302 (1991)). Accordingly, "an accused's mentality is but one factor among many to consider when evaluating the voluntariness of a confession." *Id*. at 240 (citing *Bizzarri v. State*, 492 S.W.2d 944, 946 (Tex. Crim. App. 1973)). The totality-of-the-circumstances standard is sufficiently all-encompassing to protect a defendant's rights, taking into account such factors as intelligence, age, experience, and maturity. *Id*. at 241. Because mental capabilities are merely one factor to be evaluated among many, "this measure of voluntariness may be applicable to confessions made by anyone, no matter what [his] IQ happens to be." *Id*.

**Analysis**

At the hearing on the motion to suppress, the trial judge heard testimony that Stockwell read the *Miranda* warnings to Appellant line by line, and Appellant stated at the end of each line that he understood. The trial judge also heard evidence that Appellant graduated from high school after participating in special education classes, is employed, and has a bank account. The trial judge heard both Stockwell and Hinton testify that Appellant responded appropriately to questions during the interview. Additionally, the trial judge viewed the video recording of the detectives' questioning of Appellant, which allowed him to hear and see the speed at which Stockwell read the *Miranda* warnings line by line, as well as Appellant's statements indicating that he understood.

Viewing the video recording also enabled the trial judge to assess Appellant's demeanor, manner of speaking, and the appropriateness and responsiveness of Appellant's answers to questions. The trial court heard Proctor testify that Appellant tends to say "yes" even if he does not understand, and Proctor stated that during his evaluation of Appellant, Appellant did not understand the meaning of some of the words used in the *Miranda* warnings. The trial judge further heard Proctor testify that although Appellant did not understand some particular words or concepts, he nevertheless understood the gist of some of the *Miranda* warnings. Moreover, the trial judge heard Proctor testify that Appellant's intellectual disability is mild.

The trial judge's order demonstrates that he considered the totality of the circumstances. Based upon our review of the record and considering the totality of the circumstances related to Appellant's statements to the detectives, we conclude that the trial court did not abuse its discretion by concluding that despite Appellant's intellectual deficiencies, he was capable of knowingly, intelligently, and voluntarily waiving his *Miranda* rights and did so. *See Kerwick*, 393 S.W.3d at 273; *Delao*, 235 S.W.3d at 239-41; *Armendariz*, 123 S.W.3d at 404; *Ross*, 32 S.W.3d at 855; *Penry*, 903 S.W.2d at 744; *Smith*, 779 S.W.2d at 429 n.8; *Casias*, 452 S.W.2d at 488; *Grayson*, 438 S.W.2d at 555; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.21. Accordingly, we overrule issue one.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment. All pending motions are ***overruled as moot***.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered July 17, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 17, 2024**

**NO. 12-23-00291-CR**

**KENTRAVIOUS RAYMOND WILLIAMS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court
of Smith County, Texas (Tr.Ct.No. 114-0094-20)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREEED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*