**Ark James PRICE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13-90-356-CR.**

Court of Appeals of Texas,
Corpus Christi.

Oct. 31, 1991.

Rehearing Overruled Nov. 21, 1991.

George B. Mackey, Richard Alley, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Fort Worth, Betty Marshall, Asst. Crim. Dist. Atty., Fort Worth, for appellee.

Before NYE, C.J., and SEERDEN and BISSETT[1], JJ.

## OPINION

NYE, Chief Justice.

A jury found appellant, Ark James Price, guilty of aggravated robbery and also found the habitual felony offender allegations to be true. The jury assessed as punishment seventy-five years' confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant brings six points of error. We affirm the judgment of guilt and abate the cause for a hearing on the motion for new trial.

It was after midnight on July 15, 1989, when Ancil Thorne, a Domino's Pizza deliveryman, was on his way to deliver a pizza and Cokes to 3405 East Seminary Drive in Fort Worth. He could not find the address and was on his way back when he heard someone holler. He looked into his rearview mirror and saw a man, Frank Lemmons, waving at him. Ancil turned his car around and went to the house where Lemmons was standing. Ancil saw that a second man, appellant, was sitting next to the same house. Ancil asked Lemmons his name, and Lemmons said the name that was on the pizza box. Lemmons told Ancil that he only had a fifty-dollar bill and asked him if he had any change. Ancil got out of his car and started counting his money. Lemmons and appellant came up beside him. While Ancil was counting his money, appellant tried to go behind him, but Ancil stepped back in order to keep his eyes on them. Lemmons asked Ancil a question, and Ancil turned to answer. By the time Ancil turned back around, he felt a cold nozzle on the back of his head and heard appellant say, "Be cool, Man. We don't want to have to shoot you." Lemmons asked Ancil where the car keys were, and Ancil told him where to look. Lemmons asked Ancil to help him open the trunk. Ancil stepped forward, and appellant said, "Don't move." Ancil looked at appellant and saw that he was pointing a small, black pistol at him. Ancil told Lemmons how to open the trunk. Lemmons told Ancil that they were going to take his car and that he could pick it up later down the street. Ancil protested, and Lemmons ordered him into the trunk. Ancil refused to get in. So, appellant put the gun behind Ancil's head and told him to get in. Ancil got into the trunk, and Lemmons shut the lid. The car drove off with Ancil inside the trunk. While inside the trunk, Ancil thought that they were going to kill him. Five or ten minutes later, the car stopped at a gas station. Ancil pulled a cable inside the trunk and raised the lid two or three inches, but one of them slammed it shut. They told Ancil that they were going to let him loose around the corner. Instead, the car got on the freeway and turned onto a service road. As the car slowed down, Ancil jumped out and ran away. He heard somebody holler, "Hey." He glanced back and saw a person crouched down next to his car, aiming at him. He kept running and heard one shot and then another shot. He felt a sharp pain in his left arm, and it fell limp. He flagged down a police car and was taken to a hospital. It turned out that Ancil was shot near his left armpit. Ancil did not recover his car. Lemmons and appellant also took the pizza, Cokes, and about twenty-four dollars from Ancil.

Appellant's confession showed that he and Lemmons decided to call a Domino's Pizza and steal one of their cars. Lemmons placed an order, giving a fake address. When the deliveryman arrived, ap-

---

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1989).

pellant pointed a gun at him and demanded the car keys (appellant thought that the gun was a .38). They drove off with the deliveryman inside the trunk. When the deliveryman got out of the trunk, Lemmons shot him.

■ By point two, appellant attacks the sufficiency of the evidence to support his conviction for attempted capital murder. The first paragraph of the indictment alleged attempted capital murder, and the second alleged aggravated robbery. Before reading the indictment to the jury, the State told the trial court that it was waiving the attempted capital murder allegation. The State tried appellant for aggravated robbery, and the jury found him guilty of aggravated robbery. In reviewing the sufficiency of the evidence, we must determine whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim. App.1989); *Zamora v. State*, 779 S.W.2d 886, 889 (Tex.App.—Corpus Christi 1989, no pet.). The charge's application portion stated:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 15th day of July, 1989, in Tarrant County, Texas, the Defendant, Ark James Price, did then and there intentionally or knowingly, while in the course of committing theft of property, and with intent to obtain and maintain control of said property, threaten and place Ancil Thorne in fear of imminent bodily injury or death, and that the Defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, then you will find the Defendant guilty of aggravated robbery....

Here, appellant pointed a pistol at the victim, Ancil Thorne, and demanded his car keys. Appellant and Lemmons also took the pizza, Coke, and twenty-four dollars from Ancil. Appellant and Lemmons put Ancil inside the trunk. Ancil testified that while inside the trunk, he thought they were going to kill him. Other evidence showed that the place where Ancil was sent to deliver the pizza was in Tarrant County, Texas, and that a .38 is a firearm. When viewing this evidence in the light most favorable to the verdict, we conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler*, 769 S.W.2d at 239; *Zamora*, 779 S.W.2d at 889.

■ By point three, appellant complains that the trial court erred in overruling his motion to suppress his confession. By point four, he complains that the trial court erred in admitting his confession into evidence.[2] Appellant contends that at the time he gave his written confession, he suffered from low intelligence, organic brain damage, illiteracy, and lack of education.

■ The requirement that before an accused's statement may be used against him it must be shown that the statement was made freely and voluntarily is of constitutional dimension. *Jackson v. Denno*, 378 U.S. 368, 376–78, 84 S.Ct. 1774, 1780–81, 12 L.Ed.2d 908 (1964). Article 38.21 of the Texas Code of Criminal Procedure provides that a statement of an accused may be used in evidence against him if it appears that it was freely and voluntarily made without compulsion or persuasion. The determination of whether a confession is voluntary under the due process clause of the Fourteenth Amendment to the United States Constitution must be based upon examination of the totality of the circumstances surrounding its acquisition. *Arm-*

2. When appellate courts are asked to determine whether the trial court erred in overruling a pretrial motion, the general rule is that they consider only evidence adduced at the hearing on that motion and do not resort to testimony subsequently directed at trial because the ruling in issue was not based on the latter. *Accord: Wilkerson v. State*, 657 S.W.2d 784 (Tex.Crim. App.1983), *cert. denied*, 470 U.S. 1008, 105 S.Ct.

1371, 84 L.Ed.2d 390 (1985). But when, as in this case, appellant complains of the admission of evidence at trial, and the issue has been consensually relitigated by the parties during trial on the merits, consideration of the relevant trial testimony is appropriate. *Hardesty v. State*, 667 S.W.2d 130, 133 n. 6 (Tex.Crim.App. 1984).

*strong v. State,* 718 S.W.2d 686, 693 (Tex. Crim.App.1985). The issue is whether police interrogation techniques alleged to have been coercive, either physically or psychologically, were of a nature that any confession thereby obtained was unlikely to have been the product of a rational intellect and a free will. *Smith v. State,* 779 S.W.2d 417, 427 (Tex.Crim.App.1989).

■ In determining the admissibility of a confession, the fact that it was made by one whose mentality was at a lower than normal level is to be considered and viewed as a factor indicating, although not establishing, that the confession was lacking in voluntariness. *Casias v. State,* 452 S.W.2d 483, 488 (Tex.Crim.App.1970); *Rodriguez v. State,* 666 S.W.2d 305, 313 (Tex. App.—San Antonio 1984, no pet.). A confession is not inadmissible merely because the accused, who is not insane, is of less than normal intelligence. *Vasquez v. State,* 163 Tex.Crim. 16, 288 S.W.2d 100, 108–09 (App.1956); *Rodriguez,* 666 S.W.2d at 313. A person does not have to be literate before his confession may be admitted into evidence. *Pete v. State,* 501 S.W.2d 683, 686 (Tex.Crim.App.1973), *cert. denied,* 415 U.S. 959, 94 S.Ct. 1488, 39 L.Ed.2d 574 (1974); *Carrillo v. State,* 634 S.W.2d 21, 23 (Tex.App.—El Paso 1982, no pet.). *See* Tex.Code Crim.Proc.Ann. art. 38.22 (Vernon 1979).

■ Detective Boetcher arrested appellant and read him his *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), warnings.[3] Appellant told Boetcher that he understood his rights. Appellant was taken before a magistrate for arraignment. After the arraignment, Boetcher took appellant to his office and gave him his *Miranda* warnings on a form. Boetcher told appellant that before he could talk to him, he needed to read the warnings on the form one at a time, and, if he understood each warning, to put his initials in front of each numbered warning. As appellant read each warning, Boetcher asked him if he understood it. Appellant said that he understood each warning and wrote his initials in front of each numbered warning. Appellant signed the form. Boetcher testified that appellant appeared to take his time in reading the document. He saw appellant's eyes moving across the form. After this, appellant told his version of the alleged offense to a secretary, who typed it word for word on paper. The statement was typed on two pages, and the *Miranda* warnings appeared at the top of each page. When the statement was completed, appellant said that he could not read or write.[4] So, the secretary read the statement to him. He said that he understood the statement and that it was true and correct. He signed each page at the bottom.

Boetcher said that from the time of arrest to the time he signed his confession, appellant did not invoke his right to counsel, did not invoke his right to remain silent, and did not say that he wanted to terminate the interview. Appellant spoke freely, and Boetcher did not threaten or coerce him, nor did he make any promises to him. Appellant did not show signs of intoxication, nor did he show signs of being mentally incapacitated or retarded.

Dr. Gene Muller, a psychologist, said that appellant's reading and spelling ability was equivalent to someone who had not finished the third grade. His I.Q. was 78, which is a borderline range of functioning (The average I.Q. is between 85 and 115.). Dr. Muller did not think that appellant could completely understand the *Miranda* warnings appearing on his confession. Referring to the *Miranda* warnings, Dr. Muller said that the phrase "something could be used against him [appellant] in a court of law" fell beyond the third-grade level of understanding. But he also said that appellant, who was "street-wise" and used common sense, might understand these kinds of things. He said that appellant could have been fooling him and that some of appellant's answers could have been influenced by the difficulties that he was in. Dr. Muller could not determine, based on his assessment, whether appellant had epilepsy or brain damage.

---

3. *See also* Tex.Code Crim.Proc.Ann. art. 38.22 (Vernon 1979).

4. Appellant's confession stated: "My name is Ark James Price and my date of birth is February 3, 1961.... I have completed 9 years of schooling but I can not [sic] read or write."

■ This evidence shows that appellant was advised of his *Miranda* rights, that he understood them, and that he knowingly, intelligently, and voluntarily waived them before confessing to the alleged offense. The confession was written down as appellant related his story, and it was read to him before he signed it. Appellant's evidence that he had a 78 I.Q., was illiterate, and poorly educated does not, standing alone, render his confession inadmissible. *White v. State*, 591 S.W.2d 851, 859–63 (Tex.Crim.App.1979) (confession was held admissible even though the accused was borderline mentally retarded); *Nash v. State*, 477 S.W.2d 557, 563–64 (Tex.Crim. App.), *cert. denied*, 409 U.S. 887, 93 S.Ct. 191, 34 L.Ed.2d 144 (1972);[5] *Casias*, 452 S.W.2d at 488.[6] We hold that the trial court did not err by overruling appellant's motion to suppress and by admitting his confession into evidence.

■ By point five, appellant complains that the trial court erred in failing to make specific findings of fact concerning his mental illness, mental capacity, lack of formal education, and illiteracy as they affected the admissibility of his confession. Article 38.22, § 6 of the Texas Code of Criminal Procedure provides that if a statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing outside the jury's presence, the court must enter an order stating its conclusion whether the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based. The standard to be applied in examining a trial court's findings and conclusions is whether the record supports the trial court's findings. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). If the record supports the trial court's findings of fact, an appellate court is not at liberty to disturb them, and on appellate review, we only address whether the trial court improperly applied the law to the facts. *Romero*, 800 S.W.2d at 543; *Johnson v. State*, 698 S.W.2d 154, 159 (Tex.Crim.App. 1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986).

■ Appellant filed a pretrial motion to suppress, attacking the voluntariness of his confession. A pretrial hearing was held, and the trial court found that his confession was "knowingly, intelligently and voluntarily made." Appellant's confession was admitted into evidence during trial. After both sides closed, appellant's counsel asked the trial court to reconsider and make new findings of fact and conclusions of law concerning "the voluntariness on our motion for the confession." The court stated:

> I find again that the proper warnings were given; that the Defendant understood all of his rights and the warnings that he was given; that he waived his right to remain silent; that he understood that any statement he made could be used as evidence against him in Court, and that it would be used against him in Court; that he waived his right to have a lawyer present to advise him during and prior to any questioning; that he waived his right to have his own lawyer present; he waived his right to have a Court appointed lawyer present to advise him prior to and during any questioning; and that he waived his right to terminate the interview; and that he knowingly, intelligently, freely, and voluntarily waived the rights that he did waive and made the decisions that he did make and that his statement was made freely, knowingly, intelligently, freely, and voluntarily.[7]

---

5. In *Nash*, the court, relying on *Casias, supra*, held that a defendant with an I.Q. of 76 and an intelligence-emotional level of a 12–year–old was not as a matter of law incapable of waiving his *Miranda* rights.

6. In *Casias*, the defendant had a 68 I.Q., was retarded and illiterate, had a limited vocabulary, had a mental age of eight to ten years, and had a second-grade education. The Court of Criminal Appeals held the confession admissible.

7. In this case, the trial court heard evidence on the motion to suppress and during the case-in-chief. The trial court's findings and conclusions were transcribed and made a part of the statement of facts which, in turn, have been made a part of the appellate record. Under these circumstances, the requirement of written findings as mandated by article 38.22 has been met. *Perkins v. State*, 779 S.W.2d 918, 925 (Tex. App.—Dallas 1989, no pet.). *See Parr v. State*, 658 S.W.2d 620, 623 (Tex.Crim.App.1983).

We hold that, based on the facts of this case, the trial court did not err in finding that the confession was given knowingly, intelligently, and voluntarily. The trial court's findings and conclusions were specific and supported by the record. We find that the trial court properly applied the law to the facts. The point of error is overruled.

 By point six, appellant complains that the trial court erred in denying his specially requested charge regarding the voluntariness of his confession. He contends that this charge should have included his mental illness, mental capacity, illiteracy, and lack of formal education as factors affecting the voluntariness of his confession. Article 38.22, § 6 of the Texas Rules of Criminal Procedure states, in pertinent part:

> Upon the finding by the judge as a matter of law and fact that the statement was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be instructed that unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose....

Article 38.22, § 7 states that "[w]hen the [voluntariness] issue is raised by the evidence, the trial judge shall appropriately instruct the jury, generally, on the law pertaining to such statement." If evidence is before the jury that the defendant lacked the mental capacity to understand his rights, the trial court errs in not instructing the jury on the issue of voluntariness. *Rogers v. State*, 549 S.W.2d 726, 729 (Tex. Crim.App.1977); *Washington v. State*, 388 S.W.2d 200, 204 (Tex.Crim.App.1965).

In *Casias, supra*, the trial court submitted the voluntariness issue to the jury, requiring that before considering the confession, they had to find that all the proper warnings were given and that the defendant did "knowingly, intelligently, and voluntarily waive those rights prior to and during the making of the alleged statement." The defendant complained that the trial court failed to instruct on his mental ability to understand the contents of his statement and his warnings. The court held that the trial court's failure to charge on mental ability did not injure the defendant's rights or deprive him of a fair and impartial trial in view of the charge and counsel's jury argument on intelligence and mental ability as factors to be considered in determining voluntariness.

In *Bell v. State*, 582 S.W.2d 800 (Tex. Crim.App.1979), the defendant, who was mentally retarded, requested a special instruction on the voluntariness of his confession. The court refused and instructed the jury that if the defendant did not "knowingly, intelligently, and voluntarily waive said right prior to and during the making of said statement, then such statement would not be voluntary...." The Court of Criminal Appeals found the charge to be proper and that the defendant's requested charge on mental retardation would have been an improper comment on the weight of the evidence.

Here, the trial court submitted the voluntariness issue to the jury, requiring that before considering the confession, they had to find, beyond a reasonable doubt, that all the proper warnings were given before appellant made the statement, that the statement was freely and voluntarily made, and that appellant knowingly, intelligently, and voluntarily waived his rights prior to and during the making of the statement. During final summation, appellant's counsel argued to the jury that appellant's low intelligence, mental capacity, and illiteracy, affected the voluntariness and reliability of appellant's confession. We hold that in view of the charge and counsel's argument, the trial court did not err in refusing to submit the requested instruction. *See Bell*, 582 S.W.2d at 812; *Casias*, 452 S.W.2d at 489.

By point one, appellant complains that the trial court erred by not holding a hearing on his motion for new trial. On September 28, 1990, appellant filed a timely motion for new trial, alleging jury misconduct. No hearing was ever held on the motion for new trial, and it was overruled by operation of law.

 Granting or denying motions for new trial rests within the sound discretion of the trial court, and in the absence of

an abuse of discretion its decision will not be disturbed on appeal. *Appleman v. State*, 531 S.W.2d 806, 810 (Tex.Crim.App. 1976); *Kiser v. State*, 788 S.W.2d 909, 914 (Tex.App.—Dallas 1990, pet. ref'd). When a timely motion for new trial is supported by a sufficient affidavit, a trial court which denies an accused a hearing abdicates its fact-finding function and denies the accused a meaningful appellate review. *McIntire v. State*, 698 S.W.2d 652, 660 (Tex.Crim.App.1985). A motion for new trial which alleges jury misconduct, "must be supported by the affidavit of a juror or some other person who was in a position to know the facts, or must state some reason or excuse for failing to produce the affidavits." *McIntire*, 698 S.W.2d at 658; *Dugard v. State*, 688 S.W.2d 524, 528 (Tex. Crim.App.1985). In *McIntire*, the court held (footnote omitted):

> "As a matter of pleading and as a prerequisite to obtaining a hearing [on a motion for new trial], keeping in mind that the purpose of the affidavit requirement is to limit the parameters of the hearing that is sought, we hold that an affidavit is sufficient if it demonstrates that reasonable grounds exist for believing that jury misconduct occurred...." [8]

*McIntire*, 698 S.W.2d at 658; *Gibbs v. State*, 819 S.W.2d 821 (Tex.Crim.App.1991).

Two affidavits were attached to appellant's motion for new trial. Rejohnia Faye Barnard's affidavit stated, in pertinent part:

> During the punishment phase of the Trial, during deliberations, I do not remember parole being discussed. I do remember the fact was brought up that the Defendant had been on parole before and it didn't seem to help. I do not agree with the last statement. I do not recall the phrase "it didn't seem to help" being said during the deliberations.

Armando A. DeLeon's affidavit stated, in pertinent part:

During the punishment phase of deliberations, while the jurors were taking a break, parole was brought up and the length of time someone would have to stay in jail. The Jury Foreperson, Ms. Smith, stopped the conversation at this time by saying that the Judge said parole could not be discussed.

█ Here, DeLeon's affidavit stated that parole was "brought up," along with the length of time someone would have to stay in jail. Even though Foreperson Smith stopped the conversation, we cannot determine from DeLeon's affidavit whether the parole discussion had any effect on the sentence imposed. DeLeon's affidavit was sufficient to put the trial court on notice that reasonable grounds exist to believe misconduct occurred. Consequently, appellant was entitled to a hearing on his motion for new trial with regard to the issue raised in DeLeon's affidavit.

Appellant's appeal is ordered ABATED and this cause is REMANDED to the trial court for a hearing on appellant's motion for new trial with regard to the incident described in DeLeon's affidavit. If the trial court denies the motion for new trial, the appeal will be reinstated when the supplemental record is filed in this court. *See* Tex.R.App.P. 81(a). Appellant will then have fifteen days to file a supplemental brief or to inform this court that no brief will be filed. If the trial court does not comply timely with this order within thirty days (or explain otherwise), the appeal will be reinstated, the judgment reversed, and the cause remanded for a new trial on punishment. *Shields v. State*, 809 S.W.2d 230, 234 (Tex.Crim.App.1991); Tex.Code Crim.Proc.Ann. art. 44.29(b) (Vernon Supp. 1991).

There being no error in the guilt phase of trial, the finding of guilt is AFFIRMED.

---

**8.** In *McIntire,* the court did not hold that the affidavit, standing alone, must establish each of the five prongs of the test announced in *Sneed* *v. State,* 670 S.W.2d 262, 266 (Tex.Crim.App. 1984).