NO. 12-00-00329-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


KENNETH NEAL WEATHERFORD,
§
 APPEAL FROM THE 173RD

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 HENDERSON COUNTY, TEXAS

 

 Kenneth Neal Weatherford ("Appellant") appeals from the trial court's judgment revoking
his community supervision and sentencing him to ten years of imprisonment for the offense of
aggravated assault. Appellant brings three issues on appeal. We affirm.


Background


 On February 27, 1998, Appellant pleaded guilty to the offense of aggravated assault and was
sentenced to ten years of imprisonment probated for ten years. As part of the conditions of his
community supervision, Appellant was required to refrain from committing an offense "against the
laws of the State of Texas." (1) On February 11, 2000, the State of Texas (the "State") filed a Motion
to Revoke Community Supervision alleging that Appellant had committed the offense of aggravated
sexual assault on or about December 14, 1999. Appellant pleaded not true to the allegation. On
October 5-6, 2000, the trial court heard the State's motion. At the revocation hearing, testimony was
presented showing that the victim of the aggravated sexual assault, Jennifer Kinabrew ("Kinabrew"),
had selected Appellant's picture out of a photographic lineup. Kinabrew also identified Appellant
as the perpetrator in open court. Further, Appellant's written statement wherein he confessed to
assaulting Kinabrew was introduced into evidence. At the close of the hearing, the trial court
revoked Appellant's probation and sentenced him to ten years of imprisonment. Thereafter, on
November 28, 2000, the trial court signed a judgment in accordance with these pronouncements.


Revocation of Community Supervision


 In issue one, Appellant argues that the evidence is legally and factually insufficient to support
the trial court's judgment revoking his community supervision. 

Standard of Review for Revocation of Community Supervision 

 Although Appellant couches his first issue in terms of legal and factual sufficiency,
community supervision may be revoked upon a showing by a preponderance of the evidence that a
defendant has violated the terms of his community supervision. Cobb v. State, 851 S.W.2d 871, 874
(Tex. Crim. App. 1993); Lee v. State, 952 S.W.2d 894, 897 (Tex. App.-Dallas 1997, no pet.). 
Appellate review of a revocation proceeding is limited to a determination of whether the trial court
abused its discretion. Lee, 952 S.W.2d at 897. In a community supervision revocation proceeding,
the trial judge is the sole trier of facts, credibility of witnesses and weight to be given the testimony. 
Taylor v. State, 604 S.W.2d 175, 179 (Tex. Crim. App. 1980). A finding of a single violation of the
conditions of community supervision is sufficient to support revocation. Id. at 180; see also
Sanchez v. State, 603 S.W.2d 869, 871 (Tex. Crim. App. 1980); Burke v. State, 930 S.W.2d 230,
232 (Tex. App.-Houston [14th Dist.] 1996, pet. ref'd).

Identification of Appellant 

 In issue two, Appellant asserts that his identification as the perpetrator was tainted by an
impermissibly suggestive pretrial photographic identification procedure. Two days after the sexual
assault, Kinabrew went to the Athens Police Department to give a statement. After providing a
written statement, Detective Mike Murphy ("Murphy") showed Kinabrew some pictures and asked
if she could identify one of the individuals as the perpetrator. Kinabrew told Murphy that although
one of the pictures looked like the man who assaulted her, the picture also appeared "different." The
picture Kinabrew selected was of Appellant's brother, Anthony Weatherford. 

 Later that day, Kinabrew returned to the Athens Police Department to view some additional
pictures. When this photographic array was presented to her, she immediately selected Appellant's
picture as the perpetrator. Kinabrew testified that the picture she selected out of the second
photographic array looked "exactly" like the man who assaulted her and that it had not been in the
first array. She further stated that there was no question in her mind that the picture she selected was
the perpetrator. 

 The picture Kinabrew had selected earlier was in the second array. After she selected
Appellant's picture, Murphy presented her with the photograph she had selected earlier and asked
her to compare the two to be sure of Appellant's identification as the perpetrator. She told Murphy
that she was sure. At the revocation hearing, Kinabrew identified Appellant in open court as the
perpetrator.

 Appellant claims that Kinabrew's in-court identification of him was tainted by an
impermissibly suggestive photographic identification procedure. However, although Appellant
claims that the identification procedure was impermissibly suggestive, he does not contend that the
photographic array contained dissimilar subjects nor does he any otherwise contend that Murphy
structured the array in a manner or gave Kinabrew some information that would make his picture
more likely to be selected. Wilson v. State, 15 S.W.3d 544, 553 (Tex. App.-Dallas 1999, pet. ref'd)
("A photographic spread should depict persons of the same race, general skin color, age, and height
as the suspect."); see Epps v. State, 811 S.W.2d 237, 244 (Tex. App.-Dallas 1991, no pet.)
(Appellant contended that the photographic lineup was impermissibly suggestive because he was the
only person wearing a jacket or a jacket and a red shirt). A copy of the photographic lineup is
contained in the record. All of the individuals in the array are white males of approximately the
same age with similar facial features and hair styles. 

 In addition, although he asserts that Kinabrew's identification of him was unreliable, he does
not explain why (2) she would be unable to identify him in open court. Loserth v. State, 963 S.W.2d
770, 772 (Tex. Crim. App. 1998) ("[I]f the totality of the circumstances reveals no substantial
likelihood of misidentification despite a suggestive pre-trial procedure, subsequent identification
testimony will be deemed 'reliable . . . '"). To support his argument, Appellant relies solely on
Murphy's investigation of the sexual assault. Appellant points out that Murphy testified that Kim
Moody ("Moody"), a resident of the apartment complex where the sexual assault occurred, told him
that the assault on Kinabrew seemed similar to some problems she had experienced with Anthony
Weatherford. He also points out that Anthony Weatherford lived in the apartment complex where
the sexual assault occurred. Further, Appellant notes that although Murphy acknowledged that
Anthony Weatherford was a suspect, he never interviewed Anthony Weatherford.

 We fail to see how Murphy's failure to interview Anthony Weatherford rendered the pretrial
identification procedure impermissibly suggestive or how such a failure rendered Kinabrew's in-court identification unreliable. Thomas Chaney, Appellant's and Anthony Weatherford's work
supervisor, testified that Appellant was not at work on the date of the sexual assault. In contrast,
Chaney testified that Anthony Weatherford was at work on the date the assault occurred. When
Kinabrew viewed the first photographic lineup, she told Murphy that Anthony Weatherford's picture
looked like the perpetrator, but appeared different. Upon viewing an array which contained
Appellant's picture, she immediately selected the Appellant as looking exactly like the perpetrator. 
She testified that there was no question in her mind that the picture she selected was the man who
assaulted her. She did not change her position after comparing Appellant's picture with his
brother's. Less than one year after the assault, Kinabrew identified Appellant in open court as the
perpetrator. She did not exhibit any uncertainty about her identification of Appellant at the
revocation hearing. Kinabrew never positively identified anyone other than Appellant as the
perpetrator. Having reviewed the record, we conclude that the photographic lineup was not
impermissibly suggestive and that Kinabrew's in-court identification was sufficiently reliable to be
properly considered by the trial court. Issue two is overruled.

Appellant's Confession 

 In issue three, Appellant contends that the State violated his constitutional rights in
procuring his confession and, therefore, his confession is "insufficient evidence" to be used in
revoking his community supervision. Murphy testified that he went to Appellant's apartment,
informed Appellant that he was investigating a sexual assault and that Appellant accompanied him
to the Athens Police Department. While at the police department, Appellant provided a written
confession. The confession was admitted into evidence at the revocation hearing. The crux of
Appellant's argument under this issue is that Appellant's mental status rendered him incapable of
understanding the meaning and effect of his confession. We construe Appellant's argument to
contend, in essence, that his confession was not voluntary. 

 Murphy testified that he did not arrest Appellant when he went to Appellant's apartment and
that Appellant accompanied him to the police department voluntarily. He stated that he gave
Appellant the warnings contained in article 38.22 of the Texas Code of Criminal Procedure. Tex.
Code Crim. Proc. Ann. art. 38.22, § 2 (Vernon 1979). Further, he stated that he told Appellant that
he was free to leave at any time and that he could "go to the bathroom, get a soda, smoke a cigarette
whatever." Murphy also testified that Appellant was at the police department about an hour before
he gave his statement. Appellant's statement itself shows that Appellant placed his initials beside
each of the rights contained in article 38.22, section 2 and that Appellant signed a waiver of these
rights. Appellant signed the statement acknowledging that he understood the nature and content of
the statement and that the facts contained therein were true and correct. Murphy testified that he read
Appellant's statement back to him and asked if it was true and correct. He further testified that
Appellant told him that he had "attended or completed" the tenth grade at Athens High School. 

 Murphy stated that at one point during the interview at the police department when Appellant
was looking around at the objects on the wall and not paying attention to the conversation, Murphy
said to Appellant, "Don't lie to me." He also testified that when he asked Appellant if he was on any
medication, Appellant responded that he was a client at the Andrews Center (3) and that he was
prescribed Prozac. (4) Further, Murphy testified that in his experience as a detective, he had learned
that Prozac was prescribed for depression, that the fact that a person was taking this medication
could influence his decision to ask that individual for a statement and that Prozac could affect what
a person says and why he says it. However, he stated that Appellant's speech was not slurred, that
he did not appear to be sick and that he did not appear to be taking any medication. In addition,
Murphy stated that the fact that a person has mental or psychiatric problems has a "bearing" when
he is dealing with a subject and that he would generally think that such a person would be easily
intimidated by a police officer if he is under investigation for a crime. Murphy also testified that
Appellant never stated to him that he was scared or nervous or "just trying to get you guys off his
back." Finally, Murphy testified that he did not coerce Appellant either mentally or physically. 

 Appellant called Thomas G. Allen ("Allen"), a psychologist, as a defense witness. Allen
testified that he was appointed by the trial court to exam Appellant, which he did on September 7,
2000. Allen testified that after examining Appellant, he concluded that Appellant was "marginally
competent." By "marginally competent," Allen stated that he meant:


 . . . that [Appellant] was competent but the competence was marginal in that given his history of
impaired cognitive capacity or mental capacity and given his history of mental illness which was pretty
lengthy and difficult, he was competent but marginally so because there might be some fluctuations
as his mental status fluctuates.



He also stated that Appellant's mental health records indicated that Appellant had been classified
as "borderline mental retardation" but also "mild mental retardation." Further, Allen testified that
Appellant had been on quite a few medications over the years and at the time of the examination, he
believed he was using Risperdal, which is an antipsychotic mediation. 

 In addition, Allen testified that Appellant told him he confessed, but that he had been
"intimidated and coerced." He stated that in his opinion, he would "worry" about a person, such as
Appellant, who is borderline retarded and has a history of mental illness being intimidated or coerced
into giving a statement or confession. With regard to the written statement itself, Allen testified that
it contained poor spelling and grammar consistent with Appellant's mental health/retardation
background, but that it also contained attempts to use words that "are probably not consistent with
his mental retardation and mental health background." When asked whether, based on his
examination of Appellant and Appellant's mental health records, the written confession could have
been coerced, Allen testified as follows:


 A. Only to the extent that because of his background and cognitive capacity he is probably more easily
led or coerced than your average person. And because - - and I would have a problem with some of
the language that's used in here as really not consistent with his vocabulary such as he's attempting
to say, apparently, in here - - this is in an effort to say, She struck up a conversation. He's more likely
to say, you know, We done started to talk. Then he makes a statement in here, I told him I had
committed a rape.


 Q. Would you normally find - - wouldn't it be unusual for someone like this to use the word
"committed?"


 A. Yes. I really find that unlikely to be in his vocabulary.


 Q. Wouldn't it be safe to say, Doctor, that he's going to be very nervous in an interview room giving
a statement like this to two officers?


 A. Yeah, he's probably going to be pretty easily intimidated. Yes. And nervous, to answer your
question accurately.



 On cross-examination, Allen testified that he believed Appellant had an adequate
understanding of what probation meant. Further, Allen stated that during the interview on
September 7, 2000, Appellant was, for the most part, cooperative and that he had an understanding
of what he was charged with and he was able to identify his attorney. Finally, he stated that it was
not unusual for a person to recant an incriminating statement. 

 Article 38.21 of the Texas Code of Criminal Procedure provides that a statement of an
accused may be used in evidence against him if it appears that the same freely and voluntarily made
without compulsion or persuasion. Tex. Code Crim. Proc. Ann. 38.21 (Vernon 1979). The
determination of whether a confession is voluntary is based on an assessment of the totality of the
circumstances surrounding its acquisition. Griffin v. State, 765 S.W.2d 422, 429 (Tex. Crim. App.
1989). Evidence of mental retardation and mental deficiency is a factor, but not determinative, in
ascertaining the voluntariness of a confession. Penry v. State, 903 S.W.2d 715, 744 (Tex. Crim.
App. 1995), citing Smith v. State, 779 S.W.2d 417, 429 n.8 (Tex. Crim. App. 1989); Bizarri v. State,
492 S.W.2d 944, 946 (Tex. Crim. App. 1973). A confession is not inadmissible merely because the
defendant, who is not insane, is of less than normal intelligence. Vasquez v. State, 163 Tex. Crim.
16, 288 S.W.2d 100, 108-09 (1956); Price v. State, 818 S.W.2d 883, 887 (Tex. App.-Corpus Christi
1991), vacated on other grounds by, 826 S.W.2d 947 (Tex. Crim. App. 1992). The issue is whether
the accused's mental impairment is so severe that he is incapable of understanding the meaning and
effect of his statement. Casias v. State, 452 S.W.2d 483, 488 (Tex. Crim. App. 1970); Harner v.
State, 997 S.W.2d 695, 699 (Tex. App.-Texarkana 1999, no pet.). Typically, this is a question for
the fact finder. Bell v. State, 582 S.W.2d 800, 809 (Tex. Crim. App. 1979); Harner, 997 S.W.2d
at 699.

 Initially, we note that in the February 27, 1998 judgment finding Appellant guilty of
aggravated assault, the trial court found that Appellant was mentally competent. Further, we note
that after Allen's September 7, 2000 examination of Appellant, he concluded that Appellant was
competent to stand trial. In White v. State, 591 S.W.2d 851 (Tex. Crim. App. 1979), the court of
criminal appeals stated that ". . . it is difficult to see how one accused of a crime may not have
sufficient intelligence or mental ability to understand the content his confession and yet be competent
to stand trial, understand the nature of the charge against him and to assist his counsel in preparing
a rational defense." Id. at 860, quoting Casias, 452 S.W.2d at 489. There is evidence that Appellant
was advised of his statutory rights, that he understood them, and that he voluntarily waived them
before giving his statement. After Appellant wrote out his statement, it was read back to him and
he signed it as being true and correct. Appellant's evidence that he is mentally retarded and has a
history of mental illness does not, standing alone, render his statement inadmissible. White, 591
S.W.2d at 860 (confession admissible even though defendant was borderline mentally retarded);
Casias, 452 S.W.2d 488-89 (confession admissible even though defendant had I.Q. of 68, was
illiterate, and had mental age of eight to ten years); Harner, 997 S.W.2d at 700 (confession
admissible even though there was evidence that the defendant had a "special ed" eighth grade
education, that he had a mental disability and that he was on medication when he gave the confession
to reduce anxiety and to make him "not hyper"); Price, 818 S.W.2d at 888 (confession admissible
even though defendant had I.Q. of 78, was illiterate and poorly educated). While Appellant's low
I.Q. and his history of mental illness may be some evidence of involuntariness, we cannot conclude
that Appellant's mental impairment was so severe that he could not understand the meaning and
effect of his statement. In a revocation proceeding, the trial court is free to assess the credibility of
witnesses and the weight to be given their testimony. Taylor, 604 S.W.2d at 179. Accordingly, we
hold that the trial court did not err in considering Appellant's confession in determining whether to
revoke Appellant's probation. Issue three is overruled.


 Conclusion


 Having concluded that the trial court properly considered Kinabrew's in-court identification
of Appellant and Appellant's confession, we also conclude that the trial court did not abuse its
discretion in revoking Appellant's community supervision. Accordingly, issue one is overruled.

 Having overruled all of Appellant's issues, the judgment of the trial court is affirmed.



 SAM GRIFFITH 

 Justice



Opinion delivered January 9, 2002.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.


























(DO NOT PUBLISH)









COURT OF APPEALS


TWELFTH COURT OF APPEALS DISTRICT OF TEXAS


JUDGMENT



JANUARY 9, 2002



NO. 12-00-00329-CR



KENNETH NEAL WEATHERFORD,


Appellant


V.


THE STATE OF TEXAS,


Appellee



 


 Appeal from the 173rd Judicial District Court


 of Henderson County, Texas. (Tr.Ct.No. B-8736)





 



 THIS CAUSE came to be heard on the appellate record and briefs filed herein,
and the same being inspected, it is the opinion of this court that there was no error in the judgment.

 It is therefore ORDERED, ADJUDGED and DECREED that the judgment
of the court below be in all things affirmed, and that this decision be certified to the court below
for observance.

 Sam Griffith, Justice.

 Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.

THE STATE OF TEXAS


M A N D A T E


*********************************************




TO THE 173RD DISTRICT COURT of HENDERSON COUNTY, GREETING: 


 Before our Court of Appeals for the 12th Court of Appeals District of Texas, on the 9th day
of January, 2002, the cause upon appeal to revise or reverse your judgment between


KENNETH NEAL WEATHERFORD, Appellant



NO. 12-00-00329-CR; Trial Court No. B-8736



Opinion by Sam Griffith, Justice.



THE STATE OF TEXAS, Appellee



was determined; and therein our said Court made its order in these words:


 "THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same
being inspected, it is the opinion of this court that there was no error in the judgment.


 It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below
be in all things affirmed, and that this decision be certified to the court below for observance."


 WHEREAS, WE COMMAND YOU to observe the order of our said Court of Appeals for
the Twelfth Court of Appeals District of Texas in this behalf, and in all things have it duly
recognized, obeyed, and executed.


 WITNESS, THE HONORABLE LEONARD DAVIS, Chief Justice of our Court of
Appeals for the Twelfth Court of Appeals District, with the Seal thereof affixed, at the City of Tyler,
this the ______ day of __________________, 200____.


 CATHY S. LUSK, CLERK



 By:_______________________________

 Deputy Clerk
1. The State made three additional allegations in its motion to revoke. However, the State abandoned these
counts at the hearing on the motion and proceeded only on the count referenced above. 
2. Neil v. Biggers, 409 U.S. 188, 199, 93 S. Ct. 375, 382, 34 L. Ed. 2d 401 (1972) (factors to be considered
when assessing the corrupting effect of any suggestive identification procedure, include: (1) the opportunity of the
witness to view the criminal at the time of the offense; (2) the witness's degree of attention; (3) the accuracy of the
witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation;
(5) the length of time between the witness and the confrontation).
3. Apparently, the Andrews Center is a mental health treatment facility. 
4. Murphy testified that Appellant "possibly" told him that he was on Prozac.