# NOS. 12-18-00066-CR
# 12-18-00067-CR
# 12-18-00068-CR
# 12-18-00069-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CRISTIAN PINEDA-NAVA, APPELLANT* | *§* | *APPEALS FROM THE 241ST* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS, APPELLEE* | *§* | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Cristian Pineda-Nava appeals his convictions for aggravated sexual assault of a child and indecency with a child. In one issue, he argues that the trial court erred by denying his motion to suppress. We affirm.

## BACKGROUND

Appellant was arrested on January 21, 2016, for three charges of aggravated sexual assault of a child and one charge of indecency with a child. The following day, he appeared before the trial judge and was appointed an attorney. On January 29, 2016, while Appellant was still incarcerated, Smith County Sheriff's Office Detectives Clint Benson and Aaron Hinson interviewed Appellant concerning the charges. Detective Benson read Appellant his ***Miranda*** warnings, and Appellant waived his rights and made a statement.

On March 17, Appellant was indicted on the charges. Prior to trial, Appellant moved to suppress his statement arguing that it was involuntary and made in violation of his right to counsel. At the hearing, Appellant testified that he was unfamiliar with the legal system and had never been arrested. He testified he was dyslexic, was held back twice in school because he failed two grades,

and dropped out of school in the ninth grade. Appellant admitted not telling the detectives he had an attorney because he believed they were there to help him. He denied knowing the meaning of the words "terminate" or "waive." Appellant stated that he did not knowingly waive his constitutional rights because he did not understand what his rights were or what he was giving up, and further did not understand that his statement could hurt or be used against him in court. On cross examination, Appellant acknowledged that (1) he knew the detectives were police officers, (2) the detectives explained why they were there, and (3) he knew they were recording his statement. Appellant further acknowledged that Detective Benson read the *Miranda* warnings aloud to him, thus, his dyslexia did not contribute to his difficulty in understanding the warnings. He also acknowledged that he understood he had the right to have a lawyer present at the time of the interview but did not request one because he thought the detectives were there to help him. Appellant told the prosecutor he "didn't know" why he told the detectives he understood his *Miranda* warnings. Appellant acknowledged that he was not threatened, physically or verbally, into making a statement.

Detective Benson testified at the hearing, and a copy of the interview was entered into evidence. Detective Benson testified he was unaware that Appellant was represented by counsel at the time of the interview. Nor did he check the jail computer system to determine how long Appellant had been in jail and if he had been appointed an attorney prior to the interview. He testified that had he been aware that Appellant was represented by counsel, he would have contacted Appellant's counsel and not Appellant. Detective Benson testified that he read Appellant his *Miranda* warnings and Appellant agreed to waive his rights and give a statement. Detective Benson stated that Appellant did not disclose that he was represented by counsel, nor did he request his counsel at any time during the interview.

After the hearing, the trial court denied the motion to suppress. Thereafter, Appellant entered a plea of "guilty" and was sentenced to forty years imprisonment on the aggravated sexual assault charges, and twenty years imprisonment on the indecency with a child charge, to run concurrently. This appeal followed.

## MOTION TO SUPPRESS

In Appellant's first issue, he argues the trial court erred by denying his motion to suppress his statement.

2

## Standard of Review

When reviewing claims concerning the admission of statements made as the result of custodial interrogation, we conduct the bifurcated review articulated in *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). *See Pecina v. State*, 361 S.W.3d 68, 78–79 (Tex. Crim. App. 2012); *see also Guzman*, 955 S.W.2d at 89. We measure the propriety of the trial court's ruling with respect to alleged violations under the totality of the circumstances, almost wholly deferring to the trial court on questions of historical fact and credibility, but reviewing de novo all questions of law and mixed questions of law and fact that do not turn on credibility determinations. *See Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011). We afford almost total deference to the trial court's determination of historical facts and mixed questions of law and fact that turn on the evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89.

## Right to Counsel

The Fifth Amendment prohibits the government from compelling a criminal suspect to bear witness against himself. U.S. Const. amend. V ("No person ... shall be compelled in any criminal case to be a witness against himself"). In *Miranda v. Arizona*, the Supreme Court delineated safeguards to protect a citizen's privilege against self incrimination in custodial interrogations. 384 U.S. 436, 441, 86 S. Ct. 1602, 1611, 16 L. Ed. 2d 694 (1966). Prior to questioning, a suspect in custody must be given *Miranda* warnings, and only if he voluntarily and intelligently waives his *Miranda* rights, including his right to counsel, may his statement be used in his trial. *Id.*, 384 U.S. at 475, 86 S. Ct. at 1628.

Once a person invokes his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by merely showing that the suspect responded to police initiated interrogation after being advised of his rights again. *Edwards v. Arizona*, 451 U.S, 477, 485, 101 S. Ct. 1880, 1885, 68 L. Ed. 2d 378 (1981). The purpose of the *Edwards* rule is to prevent police from "badgering a defendant into waiving his previously asserted *Miranda* rights." *Michigan v. Harvey*, 494 U.S. 344, 350, 110 S. Ct. 1176, 1880, 108 L. Ed. 2d 293 (1990).

The Sixth Amendment right to counsel attaches once the "adversary judicial process has been initiated," and it guarantees "a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S. Ct. 2079, 2085, 173 L. Ed. 2d 955 (2009). Generally, an Article 15.17 initial appearance and magistration is considered the initiation of adversarial judicial proceedings and signals the attachment of a

defendant's Sixth Amendment right to counsel*. **Rothgery v. Gillespie County**, 554 U.S. 191, 212, 128 S. Ct. 2578, 2591–92,171 L. Ed. 2d 366 (2008); *see also* TEX. CODE CRIM. PROC. ANN. art. 15.17 (West Supp. 2018). A Sixth Amendment request for an attorney at an arraignment, initial appearance, or Article 15.17 hearing is a request for counsel for all judicial criminal proceedings, commonly referred to as "trial counsel." **Pecina**, 361 S.W.3d at 77–78. A defendant's request for trial counsel says nothing about his possible invocation of his right to counsel during later police initiated custodial interrogation. **Id.** at 78. If a defendant wishes to invoke his Sixth Amendment right to counsel during post-arraignment custodial interrogation, he must do so by invoking his right to counsel when law enforcement approaches him and gives him **Miranda** warnings. **Id.**; **Montejo**, 556 U.S. at 797, 129 S. Ct. at 2090.

## Voluntariness

Pursuant to Article 38.21, "[a] statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion." TEX. CODE CRIM. PROC. ANN. art. 38.21 (West 2005). A defendant may claim that his statement was not freely or voluntarily made and thus inadmissible under (1) Article 38.22, Section 6 of the Texas Code of Criminal Procedure; (2) **Miranda**, as expanded in Article 38.22, Sections 2 and 3; or (3) the Due Process Clause. **Oursbourn v. State**, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008); TEX. CODE CRIM. PROC. ANN. art. 38.22, §§ 2, 3, 6 (West 2005); U.S. Const. amend. V. A statement may be involuntary under one, two, or all three theories. **Oursbourn**, 259 S.W.3d at 169.

A confession may be involuntary under the Due Process clause or **Miranda** only when there is police coercion or overreaching that is causally related to the confession. **Id.** However, Article 38.22 voluntariness claims can be broader in scope than Due Process or **Miranda**. A claim that a statement is involuntary under Article 38.22 can be predicated upon police overreaching, but can also include other factors that go to the state of mind of the defendant who has confessed, such as illness, medication, hallucinations, or private threats. *See id.*, 259 S.W.3d at 172; TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6.

## Analysis

Appellant concedes that he was provided the statutory warnings prior to interrogation but argues "based on [Appellant's] age, education, and previous appointment of counsel, the motion to suppress should have been granted by the trial court because there was not a showing that [Appellant] made an intelligent, knowing or voluntary waiver." Appellant does not explicitly state

in his brief that his Fifth or Sixth Amendment rights to counsel were violated by Detectives Benson and Hinton interrogating him after he was appointed an attorney. Rather, Appellant argues that his previous invocation of his right to counsel at his preliminary hearing should be considered as a factor in his argument that his statement was not made voluntarily. We are, however, required to construe an Appellant's brief liberally and review issues that are fairly included within a particular issue or point, thus, we will address whether Appellant's Fifth and Sixth Amendment rights to counsel were violated in this case. *See* TEX. R. APP. P. 38.9.

A review of the video interview reflects that Detective Benson read Appellant the warnings set forth in *Miranda* and Article 38.22, Section 2(a), Appellant waived his rights, and Appellant said he wanted to speak with detectives. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, §§ 2(a)(1)-(5); 2(b); 3(a)(2). Appellant's invocation of his Sixth Amendment right to trial counsel at his preliminary hearing did not prohibit Detectives Benson and Hinton from approaching Appellant for interrogation. As the United States Supreme Court stated in *Montejo*:

> What matters for *Miranda* and *Edwards* is what happens when the defendant is approached for interrogation, and [if he consents] what happens during the interrogation—not what happened at any preliminary hearing.

556 U.S. at 797, 129 S. Ct. at 2091; *see also Pecina*, 361 S.W.3d at 78. Had Appellant wished to have counsel present at the interrogation, he was obligated to invoke that right when the officers approached him. *See Montejo*, 556 U.S. at 797, 129 S. Ct. at 2090; *see also Pecina*, 361 S.W.3d at 78. Thus, we conclude that Appellant's right to counsel was not violated by Detective Benson or Detective Hinton when they initiated a custodial interrogation.

Further, the evidence does not establish that Appellant's statement was involuntary under the Due Process clause, *Miranda*, or Article 38.22. Appellant argues that his age, lack of education, dyslexia, and prior appointment of an attorney rendered his statement involuntary. Appellant does not explicitly argue in his brief that Detectives Benson and Hinton were overreaching or engaging in misconduct by initiating a custodial interrogation after he was appointed an attorney, and to the extent his argument can be construed to imply such, it is rejected.[1] We find no evidence in the

---

[1] Police overreaching involves scenarios such as: (1) the suspect was subjected to a four-hour interrogation while incapacitated and sedated in an intensive-care unit; (2) the suspect, while on medication, was interrogated for over eighteen hours without food, medication, or sleep; (3) the police officers held a gun to the head of the wounded suspect to extract a confession; (4) the police interrogated the suspect intermittently for sixteen days using coercive tactics while he was held incommunicado in a closed cell without windows and was given limited food; (5) the suspect

5

record, nor does Appellant explicitly point to any evidence on appeal, of any police misconduct or overreaching that would support a conclusion that Appellant's statement was involuntary under the Due Process Clause or *Miranda*.

Moreover, for a claim of involuntariness under Article 38.22, Appellant's mental capacity is a factor, but is not determinative, in ascertaining the voluntariness of a confession. *Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995). The determination of whether a confession is voluntary is based on an assessment of the totality of the circumstances surrounding its acquisition. *Id.* A confession is not inadmissible merely because the defendant, who is not insane, is of less than normal intelligence. *Weatherford v. State*, No. 12-00-00329-CR, 2002 WL 59336, at *5 (Tex. App.—Tyler Jan. 9, 2002, no pet.) (op., not designated for publication); *see Vasquez v. State*, 288 S.W.2d 100, 108–09 (Tex. Crim. App. 1956); *Price v. State*, 818 S.W.2d 883, 887 (Tex. App.—Corpus Christi 1991), *vacated on other grounds by*, 826 S.W.2d 947 (Tex. Crim. App. 1992). The issue is whether the accused's mental impairment is so severe that he is incapable of understanding the meaning and effect of his statement. *Casias v. State*, 452 S.W.2d 483, 488 (Tex. Crim. App. 1970). Typically, this is a question for the fact finder. *See Bell v. State*, 582 S.W.2d 800, 809 (Tex. Crim. App. 1979).

Initially we note the record reveals no suggestion that Appellant was incompetent to stand trial, nor is there any evidence Appellant suffers from any mental illness. After the trial court denied Appellant's motion to suppress, Appellant opted to plead "guilty" to the charges in return for a plea recommendation from the State, and the trial court found Appellant mentally competent to enter his plea. The court of criminal appeals has stated that "... it is difficult to see how one accused of a crime may not have sufficient intelligence or mental ability to understand the content of his confession and yet be competent to stand trial, understand the nature of the charge against him and to assist his counsel in preparing a rational defense." *Casias*, 452 S.W.2d at 489.

Here, the trial court heard and observed the testimony of Appellant and Detective Benson, and viewed Appellant's videotaped statement. As noted, Appellant stated in the interview that he understood his rights and wished to speak with Detectives Benson and Hinton. Appellant was able

---

was held for four days with inadequate food and medical attention until he confessed; (6) the suspect was subjected to five days of repeated questioning during which police employed coercive tactics; (7) the suspect was held incommunicado for three days with little food, and the confession was obtained when officers informed him that their chief was preparing to admit a lynch mob into the jail; and (8) the suspect was questioned by relays of officers for thirty-six hours without an opportunity for sleep. *Oursbourn v. State*, 259 S.W.3d 159, 170–71 (Tex. Crim. App. 2008).

to answer questions propounded to him by detectives in the interview, and questions by his attorney in the courtroom at the hearing. Appellant conceded at the suppression hearing that his dyslexia, which affects his ability to read, was not a factor because Detective Hinton read the warnings aloud to him. Thus, while Appellant's relative youth and intellectual limitations may be some evidence of involuntariness, we cannot conclude Appellant was incapable of understanding the meaning and effect of his statement. *See id.* at 488 (confession admissible even though defendant had I.Q. of 68, was illiterate, and had mental age of eight to ten years); *Grayson v. State*, 438 S.W.2d 553, 555 (Tex. Crim. App. 1969) (statements admissible from a defendant with an I.Q. of 51 and mental age of six years); *Harner v. State*, 997 S.W.2d 695, 700 (Tex. App.—Texarkana 1999, no pet.) (confession admissible even though defendant had a "special ed" eighth grade education, a mental disability and was on anti-anxiety medication when he gave the confession); *Price*, 818 S.W.2d at 888 (confession admissible even though defendant had I.Q. of 78, was illiterate and poorly educated).

Thus, under the circumstances of this case, we hold that the trial court did not err in finding Appellant's statement was voluntary and therefore, admissible. *See Guzman*, 955 S.W.2d at 89. Appellant's only issue is overruled.

## CONCLUSION

Having overruled Appellant's sole issue, we *affirm* the trial court's judgment.

GREG NEELEY
Justice

Opinion delivered November 14, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

## NOVEMBER 14, 2018

## NO. 12-18-00066-CR

**CRISTIAN PINEDA-NAVA,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-0316-16)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

NOVEMBER , 2018

NO. 12-18-00067-CR

**CRISTIAN PINEDA-NAVA,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-0317-16)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

NOVEMBER , 2018

NO. 12-18-00068-CR

**CRISTIAN PINEDA-NAVA,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-0318-16)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER , 2018**

**NO. 12-18-00069-CR**

**CRISTIAN PINEDA-NAVA,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-0319-16)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*